[Civ. No. 41248. First Dist., Div. One. Oct. 16, 1978.]

OHIO CASUALTY INSURANCE COMPANY,
Plaintiff and Respondent, v.
AETNA INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Bronson, Bronson & McKinnon and David W. Gordon for Defendant and Appellant.

Low, Ball & Lynch, David B. Lynch and Joyce Cram for Plaintiff and Respondent.

## OPINION

**DEVINE, J.**\*—This appeal presents, according to knowledgeable counsel, a question of first impression about the meaning of Insurance Code section 11580.9, subdivision (d),[1] where an audit policy is involved. The trial court in the suit for declaratory judgment between insurance companies decided that the policy issued by appellant Aetna Insurance Company described and rated the vehicle involved in the accident and that the policy issued by respondent Ohio Casualty Insurance Company

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]Section 11580.9, subdivision (d), reads: "Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

did not describe the vehicle, wherefore the Aetna policy is primary and the Ohio Casualty policy is excess. Appellant contends that the Ohio policy does describe or rate the vehicle.

The facts which created liability are these: Oscar Gamma acquired a truck from James Bertram with the intent to buy it.[2] The price had been agreed upon. The pink slip remained in Bertram's bank, to which Bertram had directed Gamma, expecting him to obtain financing there. But Gamma obtained loan documents from his own bank, and, before he executed them, the accident happened. Four days after the transfer of possession, Gamma drove the truck over the center line of a highway and struck a vehicle in which there were four persons. These parties were compensated by a settlement under a reservation of rights agreement between the insurance companies.

That Bertram remained an owner is undisputed because the transfer provisions of Vehicle Code sections 5602, 5900 and 5901 had not been complied with. (*Uber* v. *Ohio Casualty Ins. Co.,* 247 Cal.App.2d 611 [55 Cal.Rptr. 720]; *Universal Underwriters Ins. Co.* v. *Gewirtz,* 5 Cal.3d 246 [95 Cal.Rptr. 617, 486 P.2d 145]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 743, pp. 3036-3037; Cal. Automobile Insurance Law Guide (Cont.Ed.Bar 1973) § 2.8, pp. 31-33.) It is conceded by Aetna that its policy applies, but not that it is primary.

The trial judge held that Gamma was also an owner under the ruling of the *Uber* case. Although this ruling purportedly is challenged by respondent, who asserts that the transfer was merely a bailment, this contention need not be considered (even if we assume it could be, in the absence of cross-appeal: see *Associated Indem. Corp.* v. *King,* 33 Cal.App.3d 470, 472, fn. 2 [109 Cal.Rptr. 190]), because of our decision that Aetna's is the primary insurance. But the fact that this issue is even sought to be raised is supportive of the Legislature's declared purpose to make a definitive imposition of primary liability on an insurer, as stated below. Gamma also was insured; by its terms Ohio's policy covered him immediately upon his acquiring ownership.

But Aetna's coverage was declared to be primary. The declaration must be affirmed because of section 11580.9, subdivision (d). The vehicle is expressly described and rated in a schedule of the Aetna policy. But,

[2]Both Gamma and Bertram have business titles, but these would only encumber the narration.

says Aetna, because the Ohio Casualty policy is an "audit" or "fleet" policy, by which a newly acquired vehicle automatically becomes insured upon transfer of ownership (premium to be calculated upon audit), a general description is sufficient. Aetna points to Insurance Code section 11580.1, subdivision (b)(2) which requires of a policy of liability insurance: "Designation by explicit description of, or appropriate reference to, the motor vehicles or class of motor vehicles to which coverage is specifically granted." The class, says appellant, is "an automobile owned by the named insured," (the term used in the Ohio Casualty policy) which becomes covered the moment ownership exists. This interpretation, argues appellant, is reasonable because otherwise when an audit policy is involved, a particular description might never be given; yet in the case of a recent transfer, where the statutory notice of transfer has not been given, the true owner is the transferee and his carrier should be primary or at least there should be apportionment between the two insurers.

This argument cannot avail. Section 11580.1 refers to one of the bare elementary requirements of any liability insurance policy; it does not relate, as does section 11580.9, to the incidence of primary liability where there are two policies, one containing the description or rating, the other not doing so. Nor does argument about the appropriateness of an imposition of liability, or an apportionment thereof, according to the court's concept of what may be equitable, suffice. The court is bound by the statute which requires description or rating; this, in commonsense understanding, means a particularization of the vehicle. The Legislature has declared in Insurance Code section 11580.8 that it is "the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more . . . liability insurance policies covering the same loss shall apply," in order "to avoid so far as possible conflicts and litigation, with resulting court congestion."

Although in this case the accident happened during the few days when Gamma was using the vehicle with Bertram's permission pending completion of the sale, so that Bertram might not be expected to have given the statutory notice, nevertheless the vehicle did remain described and rated on Aetna's policy. The words "conclusively presumed" in section 11580.9 prevent any other judicial interpretation of this statute which reasonably designates one carrier to be bound primarily, thus lightening the burden of the public in resolving inter-carrier disputes. (See *Argonaut Ins. Co.* v. *Colonial Ins. Co.,* 70 Cal.App.3d 608, 617-618

[138 Cal.Rptr. 855]; *Pacific Export Packers* v. *Chubb/Pacific Indem. Group*, 57 Cal.App.3d 186, 191 [129 Cal.Rptr. 86].)

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied November 9, 1978, and appellant's petition for a hearing by the Supreme Court was denied February 8, 1979.