[No. B029357. Second Dist., Div. One. Apr. 26, 1989.]

INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Plaintiff and Appellant, v. SPECTRUM INVESTMENT CORPORATION, Defendant and Respondent.

1244

1246

---

COUNSEL

Gilbert, Kelly, Crowley & Jennett, Peter J. Godfrey and Tracy W. Goldberg for Plaintiff and Appellant.

Spray, Gould & Bowers, Robert D. Brugge and Richard C. Turner as Amici Curiae on behalf of Plaintiff and Appellant.

Freeman & Golden and Alan R. Golden for Defendant and Respondent.

Liebman, Reiner & McNeil, Kurt Boyd and Lisa Strenger as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

### SPENCER, P. J.—

#### INTRODUCTION

Plaintiff Interinsurance Exchange of the Automobile Club of Southern California appeals from a declaratory judgment in favor of defendant Spectrum Investment Corporation doing business as Budget Rent-A-Car.

#### STATEMENT OF FACTS

The case was tried on stipulated facts, as follows: Defendant is in the business of renting motor vehicles to the general public pursuant to a written rental agreement. Paragraph 9 of that agreement provides, in pertinent part, that defendant "complies with the requirements of the California State Financial Responsibility Law which compliance may be afforded by insurance, bond, self-insurance program or other program permitted by law, or a combination of any of these." Defendant complied with the financial responsibility law by filing a certificate of deposit with the California Department of Motor Vehicles, pursuant to Vehicle Code section 16054.2.

On January 4, 1986, defendant rented an automobile to Julie B. Corcoran. On January 8, while she was driving the automobile, Ms. Corcoran was involved in a traffic accident resulting in injury, and claims were filed against Ms. Corcoran and defendant.

At the time of the accident, Ms. Corcoran was insured under an automobile liability insurance policy with plaintiff. The policy did not describe or rate the rented automobile.

Plaintiff filed the instant action to determine who had the primary duty to defend and indemnify Ms. Corcoran against the claims arising out of the automobile accident. The trial court ordered plaintiff to provide primary insurance coverage to Ms. Corcoran and to defend her and defendant against the claims brought against them arising out of the automobile accident.

CONTENTS

## I

Plaintiff contends the plain language of the Insurance Code establishes defendant's cash deposit is a policy of automobile liability insurance which extends primary coverage to the renters of defendant's automobiles as permissive users.

## II

Plaintiff further contends defendant's cash deposit, as a policy of automobile liability insurance, extends coverage to *its* permissive users, the renters of defendant's automobiles.

DISCUSSION

## I

■■■ Plaintiff contends the plain language of the Insurance Code establishes defendant's cash deposit is a policy of automobile liability insurance which extends primary coverage to the renters of defendant's automobiles as permissive users. We disagree.

Article 2, part 3, division 2 of the Insurance Code, sections 11580 through 11589.5, applies to actions on insurance policies containing liability provisions. Section 11580.8 discusses public policy when various liability insurance policies cover the same loss; it provides: "The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle. [¶] The Legislature further declares it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply, and such public policy is not to be changed or modified by any provision of the Vehicle Code except in those express cases where the requirements of Article 2 (commencing with Section 16450) of Chapter 3 of Division 7 of the Vehicle Code apply with

regard to a policy of liability insurance certified as provided in Section 16431 of the Vehicle Code."

Insurance Code section 11580.9 (hereafter section 11580.9) provides rules for determining which policy shall be primary when two or more automobile liability insurance policies apply to the same motor vehicle. Subdivision (a) applies when one policy covers a named insured in the business of selling, repairing, servicing, delivering, testing, road-testing, parking or storing motor vehicles. Subdivision (b) applies when one policy covers a named insured in the business of renting or leasing motor vehicles and the motor vehicle involved either is a commercial vehicle or has been leased for a term of six months or longer. Subdivision (c) applies when the loss arises out of the loading or unloading of a motor vehicle. The parties agree none of the foregoing subdivisions applies here.

As originally enacted, subdivision (d) of section 11580.9 provided: "Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess." (Stats. 1970, ch. 300, § 7, p. 576.) The only change in this subdivision since its enactment is the addition of the words "or vehicles" after the words "same motor vehicle." (Stats. 1984, ch. 461, § 1.)

In 1979, *Metro U.S. Services, Inc.* v. *City of Los Angeles* (1979) 96 Cal.App.3d 678 [158 Cal.Rptr. 207] was decided. In *Metro U.S. Services, Inc.,* plaintiff leased a dump truck to defendant; plaintiff carried insurance and defendant was self-insured. Defendant's driver was involved in an accident in the truck and plaintiff, defendant and the driver were sued. Defendant refused to provide plaintiff with a defense in the actions against it. (At p. 680.) The court addressed the question whether defendant was liable as the primary insurer under section 11580.9, subdivision (b). It concluded defendant, as a self-insurer, was not covered by the section which applied to insurance "policies" only. (*Id.,* at pp. 681-684.) The statute did not specifically apply to self-insurance and the court would not read into the statute something the Legislature had not put in it. (*Id.,* at p. 683.)

In response to *Metro U.S. Services, Inc.,* the Legislature added subdivision (g) to section 11580.9 (Stats. 1980, ch. 1189, § 1, p. 3973). (Legis. Counsel's Dig., Assem. Bill No. 2607, Summary Dig., p. 388.) Subdivision (g) provided: "For purposes of this section, a certificate of self-insurance

issued pursuant to Section 16053 of the Vehicle Code or a report filed pursuant to Section 16051 [regarding publicly owned vehicles] shall be considered a policy of automobile liability insurance."

Two cases involving the limitations of section 11580.9 were decided in 1982. In *Lumbermens Mutual Casualty Co. v. Agency Rent-A-Car, Inc.* (1982) 128 Cal.App.3d 764 [180 Cal.Rptr. 546], an automobile owned by defendant was involved in an accident with an uninsured motorist. The driver was insured by plaintiff; defendant had an automobile surety bond with National Bonding and Accident Insurance Company (National), was self-insured to $100,000 and had excess insurance coverage. The driver tendered defense of an action by the uninsured motorist to plaintiff, who tendered it to defendant, who refused to provide it. (At p. 766.)

Plaintiff contended National's coverage under the surety bond was primary pursuant to section 11580.9, subdivision (d). (128 Cal.App.3d at p. 767.) The court observed section 11580.9 applied only to " 'first tier' liability" as opposed to " 'second tier' responsibility," in which a surety becomes liable only where the principal's liability has been established and the principal fails to satisfy that liability. (*Id.,* at pp. 768-769.) A surety bond does not insure the principal but guarantees the public it will assume the principal's liability if the principal fails to make full payment; therefore, it cannot be construed to provide any further obligation, such as that the surety will undertake a defense of the payment without the principal's default. (*Id.,* at p. 769.) The court concluded the surety bond was not covered by section 11580.9 and National was not liable to provide a defense to the driver. (*Id.,* at p. 770.)

In *Western Pioneer Ins. Co. v. Estate of Taira* (1982) 136 Cal.App.3d 174 [185 Cal.Rptr. 887], the question was whether a self-insurer had the duty to indemnify a permissive user to the same extent as if it were an insurer. Insurance Code section 11580.1, subdivision (b), requires automobile liability insurance to cover permissive users as well as the named insured. The court found authority that such obligations arising from an insurance policy did not extend to self-insurers. (136 Cal.App.3d at p. 179.) Plaintiffs argued section 11580.9, subdivision (g), extended the obligations to self-insurers. The court noted subdivision (g), by its terms, applied to that "section" only. (*Id.,* at p. 181.) Had the Legislature intended subdivision (g) to apply to other sections of the Insurance Code, it could have said so, and its failure to do so implied no such intent. (*Ibid.*) Thus, the self-insurer had no duty to indemnify the permissive user. (*Id.,* at p. 184.)

In 1983, the Legislature accepted *Western Pioneer Ins. Co.*'s invitation to extend the effect of subdivision (g) to all of article 2 rather than just section

11580.9. (*Interinsurance Exchange* v. *Garcia* (1984) 160 Cal.App.3d 419, 425, fn. 5 [206 Cal.Rptr. 621].) It amended subdivision (g) to read "[f]or purposes of this article" rather than "[f]or purposes of this section." (Stats. 1983, ch. 1244, § 3.)

Then in 1984, subdivision (g) was amended again. Added was the provision "a deposit of cash made pursuant to Section 16054.2 of the Vehicle Code or a bond in effect pursuant to Section 16054 of the Vehicle Code" would be considered a policy of automobile liability insurance for purposes of article 2. (Stats. 1984, ch. 461, § 1.) The Assembly's Finance and Insurance Committee Report for Assembly Bill No. 3192, which effected the addition, dated May 5, 1984, notes the holding of *Lumbermens Mutual Casualty Co.* and states: "The end result is that a rental car agency can avoid having its auto liability insurance policy on the vehicle, which it owns and rents, to be considered primary insurance by depositing cash or posting a surety bond with DMV as a self-insurer meeting the financial responsibility limits of the Vehicle Code. [¶] This measure is intended to close this loophole except when an owner in the business of renting or leasing vehicles has leased the vehicle for a period of more than six months. [¶] Insurers are constantly finding their auto liability coverage considered as primary rather than excess when their insured rents a vehicle. Besides the insurer assuming a greater risk, the potential for auto insurance premiums rising is that much more prevalent."

A report on Assembly Bill No. 3192 of the Senate Insurance, Claims and Corporations Committee, dated June 20, 1984, similarly states: "The effect of this situation means that some companies (particularly rental car companies) can avoid having their auto liability on their vehicles from being considered primary insurance by depositing cash or surety bonds with DMV to meet the financial responsibility laws. Thus, in the event of an accident, the costs are always shifted to the insurance company of the other vehicle rather than to its own. [¶] This bill is intended to close this loophole by stating that cash deposit or surety bond filed with DMV to meet the financial responsibility requirements shall be considered a policy of automobile insurance for purpose of determining primary or excess coverage in the event of an auto collision."

Based on the foregoing history of section 11580.9, plaintiff argues the Legislature has engaged in "a consistent and concerted effort . . . to ensure that rental car companies, as a cost of doing business, bear primary responsibility for losses involving their vehicles in this state." Therefore, defendant's cash deposit must be considered a policy of automobile liability insur-

ance subject to the mandatory policy provisions required by article 2 and the primary insurance applicable to the instant accident.

Amicus curiae State Farm Mutual Automobile Insurance Company (State Farm) reviews the rules of statutory construction and further evidence of legislative intent in support of plaintiff's contention. ■ The fundamental rule in construing a statute is that the court should ascertain the intent of the Legislature in order to effectuate the purpose of the law. *(California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) In ascertaining legislative intent, the court should turn first to the words of the statute but may also rely on extrinsic aids. (*Ibid.*) As extrinsic aids, the court properly may rely on digests of the Legislative Counsel (see *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439]) and legislative committee reports, which are presumed to express legislative intent (*Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 427 [173 Cal.Rptr. 917]).

State Farm points out subdivision (g) of section 11580.9 was again amended in 1986 (Stats. 1986, ch. 1142, § 2). Added was a provision "a report of governmental ownership or lease filed pursuant to Section 16051 of the Vehicle Code" would also be considered a policy of automobile liability insurance for purposes of article 2, and the sentence: "However, this subdivision does not establish or provide the basis for any other form of liability for or upon a self-insurer or other person or entity holding, issuing, or establishing any form of security as described herein." A report of the Assembly Committee on Finance and Insurance dated July 8, 1986, and a report of the Senate Rules Committee, Office of Senate Floor Analyses, dated August 19, 1986, on Senate Bill No. 831, which proposed the foregoing amendment, state: "For purposes of priority of policy provisions, self insurance, authorized bonds and cash deposits are considered as policies of automobile liability insurance." The Assembly Third Reading of Senate Bill No. 831 also points out: "Self-insurance, authorized bonds and cash deposits are considered as policies of automobile liability insurance for purposes of priority of policy provisions."

■ Clearly, the language of section 11580.9, subdivision (g), as well as the legislative history of that subdivision, establish the legislative intent that cash deposits, such as that involved here, be considered as policies of automobile liability insurance within the meaning of subdivision (d) of that section, for the purpose of determining which policy of automobile liability insurance shall be primary and which shall be excess. It also appears one of the Legislature's purposes in enacting and amending subdivision (g) was to

hold automobile rental agencies primarily liable when automobiles rented by them for a period of less than six months are involved in accidents when driven by renters whose own automobile liability insurance policies cover their losses when driving rented automobiles.

■■■ Defendant does not disagree with the foregoing conclusion. Rather, it claims because the automobile involved in the accident was not "described or rated as an owned automobile" in its cash deposit—which plaintiff admits is the case—its cash deposit cannot be considered the primary policy of automobile liability insurance within the meaning of subdivision (d). As previously stated, that subdivision provides a conclusive presumption "the insurance afforded by that policy *in which the motor vehicle is described or rated as an owned automobile* shall be primary." (Italics added.)

In 1978, subdivision (d) was discussed in *Ohio Cas. Ins. Co.* v. *Aetna Ins. Co.* (1978) 85 Cal.App.3d 521 [149 Cal.Rptr. 562]. In that case, Gamma acquired a truck from Bertram, intending to buy it; before ownership was transferred, Gamma involved the truck in an accident. Bertram had the truck insured with defendant, and the policy remained in effect. Gamma had an "audit" or "fleet" policy with plaintiff, whereby a newly acquired vehicle was automatically insured upon transfer of ownership. (At pp. 523-524.) Even though the truck was still expressly described and rated in defendant's policy, defendant claimed plaintiff should be primarily liable, in that plaintiff's policy described the truck as part of a class of vehicles to which coverage was granted—those owned by Gamma, the insured. (*Id.,* at p. 524.)[1] Defendant argued if its interpretation of subdivision (d) were not applied, where a fleet or audit policy was involved the true owner's insurance, which should be primary, would escape liability. (85 Cal.App.3d at p. 524.)

The court was unpersuaded by defendant's argument. It pointed out section 11580.1 does not relate to the determination of primary liability. (85 Cal.App.3d at p. 524.) Further, the court was bound by the terms of section 11580.9, subdivision (d), under which it is conclusively presumed the carrier under whose policy the vehicle remained described or rated is primarily liable. (*Ibid.*) Description or rating meant "a particularization of the vehicle." (*Ibid.*) Thus the court held defendant primarily liable for coverage of the accident.

Under *Ohio Cas. Ins. Co., supra,* 85 Cal.App.3d 521, section 11580.9, subdivision (d) could not supply a presumption defendant's cash deposit

---

[1] Insurance Code section 11580.1 (hereafter section 11580.1), which describes the required provisions of an automobile liability insurance policy, allows a policy of liability insurance to designate particular motor vehicles *or* a class of motor vehicles to which coverage is specifically granted. (Subd. (b)(2).)

was primary, in that the cash deposit did not describe or rate the rented automobile involved in the accident. Defendant argues the subsequent addition to section 11580.9 of subdivision (g) and amendment of that subdivision to include cash deposits do not change this result.

Defendant cites the rule: "It is a well-established principle of statutory construction that when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction. Accordingly, reenacted portions of the statute are given the same construction they held before the amendment." (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) Since the Legislature failed to amend subdivision (d) when enacting and amending subdivision (g), the argument goes, it must be presumed the prior judicial construction of subdivision (d) is still valid and a cash deposit which does not describe or rate the covered vehicles cannot be a primary automobile liability insurance policy under subdivision (d). Defendant also points out there is a heavy burden on a party asking the court not to follow the clear language of a statute (*West Covina Hospital* v. *Superior Court* (1986) 41 Cal.3d 846, 851 [226 Cal.Rptr. 132, 718 P.2d 119, 60 A.L.R.4th 1257]) and suggests plaintiff has not met this burden.

Amicus curiae Enterprise Rent-A-Car (Enterprise) adds that a court must follow the language used in a statute and give it its plain meaning, " ' "even if it appears probable that a different object was in the mind of the legislature." ' " (*People* v. *Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380].) Thus, even if the Legislature intended to make cash deposits and other forms of "insurance" specified in subdivision (d) primarily liable when they cover the liability of an automobile rental company whose rental automobile is involved in an accident while driven by an insured driver, the Legislature's failure to amend subdivision (d) requires that subdivision (d) be applied only where the cash deposit or other form of "insurance" describes or rates the automobile.

Even where the automobile rental company had a true liability insurance policy, if it was a fleet or audit policy—a not unlikely situation—under *Ohio Cas. Ins. Co., supra,* 85 Cal.App.3d 521, it would not be primary according to the terms of subdivision (d). It may be presumed the Legislature was aware of this when it amended and reenacted section 11580.9 and its failure to amend subdivision (d) means it acquiesced to such limitations on the automobile rental company's liability. (*Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d at p. 734.) In this regard, it has been noted "section 11580.9

obviously 'did not intend to settle all issues of primary and secondary responsibility.' " (*Pacific Intermountain Express* v. *National Union Fire Ins. Co.* (1984) 151 Cal.App.3d 777, 784 [198 Cal.Rptr. 897], quoting from *Metro U.S. Services, Inc.* v. *City of Los Angeles, supra,* 96 Cal.App.3d at p. 683.)

We agree with defendant: subdivision (d) can be applied only where a cash deposit or other form of financial responsibility specified in subdivision (g) describes or rates the vehicle involved in the accident as an owned automobile. There are a number of different forms of financial responsibility available, each with its own specific requirements. This includes fleet or audit automobile liability insurance policies. If the Legislature wants to hold automobile rental companies primarily liable for accidents involving their rental vehicles, it must adopt a consistent statutory framework for doing so, no matter what form of "insurance" the company chooses. Only then can the underlying purpose of section 11580.9 be fulfilled, to avoid congesting the courts with litigation among insureds, insurers and others concerning which policy should be primary (Ins. Code, § 11580.8).

Thus, the presumption established in section 11580.9, subdivision (d), does not apply here. ■  " 'A "familiar rule of construction is that where a statute enumerates those things upon which it is to operate it is to be construed as excluding from its effect all those not expressly mentioned." ' " (*People* v. *Mancha* (1974) 39 Cal.App.3d 703, 713 [114 Cal.Rptr. 392]; accord, *Henderson* v. *Mann Theatres Corp.* (1976) 65 Cal.App.3d 397, 403 [135 Cal.Rptr. 266].) Section 11580.9's failure to cover the instant case means it must be governed by some other law, notwithstanding the Legislature's intent that section 11580.9 express the total public policy regarding the order in which liability insurance policies covering certain losses will be applied. It must therefore be ascertained what law does apply in determining whose liability is primary.

■  Defendant turns to the Vehicle Code for resolution of this question. Vehicle Code section 17150 provides the owner of a motor vehicle is liable for death or injury caused by the negligent or wrongful act or omission of a permissive driver under a theory of imputed negligence. (*Kemp* v. *Barnett* (1976) 62 Cal.App.3d 245, 248 [132 Cal.Rptr. 823].) However, the owner's liability is limited by Vehicle Code section 17151, while the driver's liability is unlimited. (*Kemp, supra,* at p. 249.) Under Vehicle Code section 17153 the owner is subrogated to the rights of the injured party and may recover from the driver the amount of any judgment recovered against it by the injured party. Thus, the liability of the permissive driver is primary and that of the owner is secondary, as between the two. (*Heves* v. *Kershaw* (1961) 198

Cal.App.2d 340, 344 [17 Cal.Rptr. 837]; accord, *Kemp, supra,* at p. 249.) Under the Vehicle Code, the driver—and thus plaintiff, as her insurance company—would be primarily liable.

Defendant also addresses the effect of the excess insurance clause in plaintiff's policy. Although a copy of that policy has not been included within the record filed with this court, according to plaintiff the clause reads: "Any insurance afforded under this part for an *Insured automobile* not owned by you, for an *additional insured automobile* or for loss occurring in Mexico, shall be excess over any other valid and collectible automobile liability insurance."

■ As a general rule, "courts will give heed to 'primary' and 'excess' insurance provisions of insurance policies. This rule is particularly applicable where the dispute is between two or more insurance carriers and . . . the rights of policyholders or their accident victims will be unaffected by its application." (*National American Ins. Co.* v. *Insurance Co. of North America* (1977) 74 Cal.App.3d 565, 574 [140 Cal.Rptr. 828]; accord, *Mission Ins. Co.* v. *Hartford Ins. Co.* (1984) 155 Cal.App.3d 1199, 1208 [202 Cal.Rptr. 635].) ■ Here, however, the dispute is not between two insurance carriers but between an insurance carrier and one of the parties facing liability, whose rights obviously will be affected by application of the excess insurance provision.

Additionally, the excess insurance clause applies only where there is "other valid and collectible automobile liability insurance." As defendant points out, here there is none. Defendant's cash deposit is considered a policy of automobile liability insurance for purposes of article 2 of part 3, division 2 of the Insurance Code only. (§ 11580.9, subd. (g).) For the foregoing reasons, the trial court was not bound by the excess insurance clause in plaintiff's policy.

We hold section 11580.9 does not apply to the instant situation to determine whose liability is primary; under the Vehicle Code the driver's—and thus plaintiff's—liability is primary. Therefore, the trial court's judgment to that effect was correct.

## II

■ Plaintiff further contends defendant's cash deposit, as a policy of automobile liability insurance, extends coverage to its permissive users, the renters of defendant's automobiles. Again, we disagree.

As previously discussed, the 1983 and 1984 amendments to Insurance Code section 11580.9, subdivision (g), provide a cash deposit made pursuant to Vehicle Code section 16054.2 shall be considered a policy of automobile liability insurance for purposes of article 2. Insurance Code section 11580.1, subdivision (b)(4), which is part of article 2, provides in pertinent part: "Every policy of automobile liability insurance to which subdivision (a) applies shall contain all of the following provisions: . . . Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using . . . such motor vehicle, provided such use is by the named insured or with his or her permission, express or implied, and within the scope of such permission . . . ." However, subdivision (a) refers only to policies of automobile liability insurance "described in Section 16054 of the Vehicle Code." Thus, by its terms, the requirements of section 11580.1, subdivision (b)(4), do not apply to defendant's cash deposit made pursuant to Vehicle Code section 16054.2.

Plaintiff argues, however, "the statutory scheme and applicable case law compel a finding that such mandatory permissive user coverage extends to cash deposits filed pursuant to Vehicle Code, Section 16054.2." It is true, as plaintiff notes, in response to *Western Pioneer Ins. Co.* v. *Estate of Taira, supra,* 136 Cal.App.3d 174, which held subdivision (g) of Insurance Code section 11580.9 applied to that section only and not to section 11580.1 so a self-insurer did not have to insure a permissive user, the Legislature amended subdivision (g) to apply to all of article 2. (*Interinsurance Exchange* v. *Garcia, supra,* 160 Cal.App.3d at p. 425, fn. 5.) The Legislature subsequently amended subdivision (g) to include cash deposits. Therefore, it could be inferred the Legislature intended section 11580.1 to apply to cash deposits made under Vehicle Code section 16054.2 as well as policies and bonds under section 16054.

Plaintiff also points out Insurance Code section 11580.05 provides, with certain exceptions not applicable here, any automobile liability insurance policy shall comply with the requirements of sections 11580, 11580.1 and 11580.2. This, too, indicates an intent that the requirements of section 11580.1 be applied to cash deposits, which are considered to be automobile liability insurance policies pursuant to section 11580.9, subdivision (g). But again, the specific language of the sections involved creates a problem.

Insurance Code section 11580 lists required policy provisions in liability insurance policies; it is not limited to any particular type of liability insurance policy. Section 11580.2 addresses the requirement of uninsured and underinsured motorist coverage in automobile liability insurance policies. It

applies to any "policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle . . . ." (Subd. (a)(1).) It is not limited to those policies "of automobile liability insurance described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance, or use of any motor vehicle . . . ," as is section 11580.1.

■ Where the Legislature uses different language in similar statutory provisions, it is presumed it did so advertently and had a different legislative intent with regard to each provision. *(Craven* v. *Crout* (1985) 163 Cal.App.3d 779, 783 [209 Cal.Rptr. 649]; *Anthony* v. *Superior Court* (1980) 109 Cal.App.3d 346, 355 [167 Cal.Rptr. 246].) ■ Moreover, every word or phrase in a statute must be given meaning and effect. *(Ibid.)* ■ Therefore, it may be presumed by the Legislature's use of the qualification in section 11580.1 and not in section 11580.2 that the Legislature intended to limit the scope of the former to only those automobile liability insurance policies specified therein, namely those described in Vehicle Code section 16054. Additionally, it may be noted the Legislature has amended section 11580.1 since the amendments to section 11580.9, subdivision (g) (Stats. 1987, ch. 800, § 3), but it failed to remove the qualifying phrase.

■ As has been pointed out previously, another rule of statutory construction is that a court must follow the language used in a statute and give it its plain meaning, " " "even if it appears probable that a different object was in the mind of the legislature." ' " *(People* v. *Weidert, supra,* 39 Cal.3d at p. 843.) This rule, too, points toward limiting the application of section 11580.1 to policies defined in Vehicle Code section 16054, even if the Legislature intended by its inclusion of cash deposits in subdivision (g) of section 11580.9 to apply the provisions of section 11580.1 to them.

■ Based on the foregoing, we must conclude section 11580.1, subdivision (b)(4), does not apply to a cash deposit made pursuant to Vehicle Code section 16054.2. Therefore, defendant's cash deposit does not extend coverage to plaintiff's insured, as a permissive user, and the trial court was correct in ruling plaintiff was obligated to provide its insured with primary coverage. Again, if the Legislature wants a different result it must amend section 11580.1 to reflect its intent.

Amici curiae raise two additional issues. ■ As a general rule, issues not raised by the appealing parties may not be considered if raised for the first time by amici curiae. *(E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 510-511 [146 Cal.Rptr. 614, 579 P.2d 505]; *Younger*

v. *State of California* (1982) 137 Cal.App.3d 806, 813-814 [187 Cal.Rptr. 310].) Therefore, we need not consider them. However, we briefly note them below.

State Farm contends defendant has a primary duty to defend plaintiff's insured, in that defendant's cash deposit is considered to be a policy of automobile liability insurance for the purposes of article 2, Insurance Code section 11580 of article 2 indicates such a policy is an indemnity agreement, and under Civil Code section 2778 an indemnity agreement embraces the cost of defense. However, Insurance Code section 11580.9, subdivision (g), provides specifically that a cash deposit is a policy of automobile liability insurance for the purposes of article 2 only, and it "does not establish or provide the basis for any other form of liability for or upon a self-insurer or other person or entity holding, issuing, or establishing any form of security as described herein." Thus it could not provide the basis for establishing liability under the Civil Code.

Enterprise contends, if subdivisions (d) and (g) of section 11580.9 are construed to place primary liability on an automobile owner whose cash deposit does not describe or rate the owned automobile, they are unconstitutionally vague and violative of the principles of due process and equal protection. Our conclusions in part I, *ante,* render it unnecessary to address the contention.

The judgment is affirmed.

Hanson, J., and Ortega, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 27, 1989. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.