[No. B073108. Second Dist., Div. Five. June 14, 1994.]

GRAND RENT A CAR CORPORATION, Plaintiff and Appellant, v. 20th CENTURY INSURANCE COMPANY, Defendant and Respondent.

[No. B073396. Second Dist., Div. Five. June 14, 1994.]

GRAND RENT A CAR CORPORATION, Plaintiff and Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellant.

[No. B073487. Second Dist., Div. Five. June 14, 1994.]

GRAND RENT A CAR CORPORATION, Plaintiff and Appellant, v. INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB, Defendant and Respondent.

## COUNSEL

Latham & Watkins, G. Andrew Lundberg, Myra J. Pasek, Ure & Peterson and Steven J. Roberts for Plaintiff and Appellant in B073108 and B073487 and for Plaintiff and Respondent in B073396.

Spray, Gould & Bowers, Robert D. Brugge, Richard C. Turner and Melinda J. McGee for Defendant and Appellant in B073396.

Ford, Walker, Haggerty & Behar, Donna Rogers Kirby, Maxine J. Lebowitz, Horvitz & Levy, Christina J. Imre and Julie L. Woods as Amici Curiae on behalf of Defendant and Appellant in B073396.

Demler, Armstrong & Rowland, Thomas J. Moses, Horvitz & Levy, Christina J. Imre and Julie L. Woods for Defendant and Respondent in B073108.

Spray, Gould & Bowers, Robert D. Brugge and Melinda J. McGee as Amici Curiae on behalf of Defendant and Respondent in B073108.

Ford, Walker, Haggerty & Behar, Donna Rogers Kirby, Maxine J. Lebowitz, Gilbert, Kelly, Crowley & Jennett, Clifford H. Woosley and Peter J. Godfrey for Defendant and Respondent in B073487.

Spray, Gould & Bowers, Robert D. Brugge, Melinda J. McGee, Horvitz & Levy, Christina J. Imre and Julie L. Woods as Amici Curiae on behalf of Defendant and Respondent in B073487.

**OPINION**

**GRIGNON, J.**—These cases involve priority of coverage disputes between Grand Rent A Car Corporation (Grand), a self-insured car rental agency, and automobile liability insurers of renters of Grand's automobiles. The question presented is whether the car rental agreements together with Grand's certificate of self-insurance constitute policies of automobile liability insurance providing primary coverage to renters of Grand automobiles pursuant to Insurance Code section 11580.9. We answer this question in the affirmative.[1]

FACTS

Grand is in the business of renting cars to the public on a short term basis. The cars are rented to the public pursuant to a written rental agreement. The rental agreement provides in pertinent part as follows: *"Liability Insurance.* Anyone driving the car as permitted by this Agreement will be protected against liability for causing bodily injury or death to others or damaging the property of someone other than the driver and/or the renter up to the limits stated in box 21 on the other side of this Agreement, but in no event less than the (minimum) financial responsibility limits required by applicable law. Such coverage will be provided by [Grand] according to the terms and subject to all of the conditions of a standard automobile liability policy, including all requirements as to notice and cooperation on [renter's] part, which are hereby made a part of this Agreement. . . . [Grand] can provide coverage under a certificate of self-insurance or an insurance policy, or both as [Grand chooses]. In any case, a copy of the policy and/or Certificate, will be available for [renter's] inspection at [Grand's] main office."[2]

---

[1]This decision concerns three unrelated superior court actions involving the same issue (Super. Ct. L.A. County Nos. SC000833 and C0749968 and Super. Ct. Ventura County No. 112155). Plaintiff in all three cases is Grand, doing business as Avis Licensee, a car rental agency. Defendants are insurance companies: in No. B073487, Interinsurance Exchange of the Automobile Club of Southern California; in No. B073108, 20th Century Insurance Company; and in No. B073396, State Farm Mutual Automobile Insurance Company. Grand filed declaratory relief actions against each insurer. In Nos. B073487 and B073108, Grand appeals from judgments entered after insurers' motions for summary judgment were granted. In No. B073396, insurer appeals from a judgment in favor of Grand following a court trial. We have ordered the cases to be heard concurrently.

[2]This language is taken from the car rental agreement in No. B073487. The agreements in Nos. B073396 and B073108 are substantially similar, but not identical. The limit of liability was not the same in the three cases. In No. B073487, Grand elected to limit its liability insurance obligation to the minimum financial responsibility limits; in No. B073396, liability

Grand elected to provide coverage under a certificate of self-insurance, which states as follows. "This is to certify that The First Gray Line Corporation/Grand Rent A Car Corporation 9841 Airport Blvd. #200, Los Angeles, CA 90045 has been approved as a Self-Insurer under the Compulsory Financial Responsibility Law and assigned S.I. No. 99 by the Director of Motor Vehicles. This Certificate exempts [Grand] from the reporting provisions of the law as provided under Section 16002 of the California Vehicle Code. However, if [Grand] or [its] employees receive a request for a report from this office, return it and furnish the Self-Insurer number assigned."

Grand rented specific cars, of which it was the registered owner, to individual renters.[3] While operating the rented cars, renters were involved in traffic collisions with third parties, who suffered personal injuries as a result of the traffic collisions. These third parties made claims against Grand.[4]

A portion of the car rental fee was allocated by Grand to the liability insurance described in the agreement. Grand employed claim investigators, set aside reserves for third party claims and retained attorneys to settle and defend against third party claims.

At the time of the traffic collisions, renters were insured under their own individual automobile liability insurance policies by insurers. Insurers' automobile liability insurance policies provided insurance coverage for vehicles listed on the declaration page of the policies. In addition, the policies provided coverage for "additional insured vehicles," which were defined as automobiles not owned by or available for regular use to renters. The cars rented by renters of Grand were "additional insured vehicles" within the meaning of insurers' policies. Insurers' policies contained "other insurance clauses" with respect to "additional insured vehicles." These clauses provided that if other insurance were available with respect to an additional

---

was limited to $100,000/300,000/25,000; and in No. B073108, liability was apparently limited to $25,000/50,000/25,000.

[3] In No. B073487, Grand rented a 1989 Chevrolet Corsica to Nancy Day Gallun on August 13, 1989; in No. B073108, Grand rented a vehicle to Thomas Cost on February 7, 1987; in No. B073396, Grand rented a 1986 Cadillac Seville to Kenneth K. Hobson on September 24, 1986.

[4] In No. B073487, on August 13, 1989, the Corsica driven by Gallun collided with a 1984 Ford Escort driven by John White, which collided with an Oldsmobile Sierra driven by Arnold William Soskins, resulting in personal injuries to White and his passengers Anna Marie O'Connor, Travis O'Connor and Michael O'Connor. In No. B073108, on February 9, 1987, the vehicle driven by Cost collided with a car driven by Ellen Adderly, resulting in personal injuries to Adderly. In No. B073396, on September 27, 1986, the Cadillac driven by Hobson collided with a car driven by Nerissa Michelle Aguilar, resulting in personal injuries to the driver and her passenger, Raylene Aguilar.

insured vehicle, the other insurance would provide primary liability coverage and insurers' policies would only provide excess coverage.

The other insurance clauses provided as follows. "If there is other automobile liability insurance for a loss covered under this part, we will pay no greater portion of the loss than the applicable limits of this policy bear to the combined limit of all policies that apply to the loss, except: (a) If you have other valid and collectible automobile liability insurance for an insured automobile newly acquired by you, this part does not apply. [¶] (b) Any insurance afforded under this part for an insured automobile not owned by you, for an additional insured automobile or for loss occurring in Mexico shall be excess over any other valid and collectible automobile liability insurance."[5]

DISCUSSION

*Issues*

In this case, we are asked to determine a priority of coverage issue between a self-insured car rental agency and the automobile liability insurer of a renter, when the car rental agency rents a car to renter pursuant to the terms of a car rental agreement and renter is involved in a traffic collision while operating the rented vehicle. In arriving at this determination, we must resolve two questions: (1) Whether the car rental agreement together with the certificate of self-insurance constitutes a policy of automobile liability insurance; and (2) If the car rental agreement together with the certificate of self-insurance constitutes a policy of automobile liability insurance, whether "the policy" provides primary coverage for injuries arising out of the operation of the rented vehicle. For the reasons discussed below, we answer both of these questions in the affirmative.

*Statutory Framework*

Division 2, part 3, article 2 of the Insurance Code, sections 11580 through 11589.5, entitled "Actions on Policies Containing Liability Provisions," is a comprehensive statutory scheme setting forth the required provisions of automobile liability insurance policies. "The Legislature declares that the

---

[5]This "other insurance clause" provision is taken from the policy issued by the Interinsurance Exchange to Gallun. The other two policies contain substantially similar, but not identical, provisions.

public policy of this state in regard to provisions authorized or required to be included in policies affording automobile liability insurance or motor vehicle liability insurance issued or delivered in this state shall be as stated in this article, that this article expresses the total public policy of this state respecting the content of such policies . . . ." (Ins. Code, § 11580.05.)

Insurance Code section 11580.9 concerns priority of coverage when two or more automobile liability insurance policies apply to the same automobile involved in an occurrence giving rise to liability to third parties. Subdivision (d) of that section provides: "[W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

Insurance Code section 11580.9 is intended to be comprehensive on the issue of priority of coverage. "The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle. [¶] The Legislature further declares it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply . . . ." (Ins. Code, § 11580.8.)

A certificate of self-insurance issued pursuant to Vehicle Code section 16053 is a policy of automobile liability insurance. (Ins. Code, § 11580.9, subd. (g).) Similarly, a cash deposit made pursuant to Vehicle Code section 16054.2, a bond in effect pursuant to Vehicle Code section 16054, and a report of governmental ownership filed pursuant to Vehicle Code section 16051 are policies of automobile liability insurance. (*Ibid.*) Subdivision (g) of section 11580.9 of the Insurance Code treating certificates of self-insurance as policies of automobile liability insurance, was added in 1980. (Stats. 1980, ch. 1189, § 1, p. 3973.) In 1984, subdivision (g) was amended to treat cash deposits and surety bonds as policies of automobile liability insurance. (Stats. 1984, ch. 461, § 1, p. 1924.) The 1984 amendments to subdivision (g)

were enacted in response to *Lumbermens Mutual Casualty Co.* v. *Agency Rent-A-Car, Inc.* (1982) 128 Cal.App.3d 764 [180 Cal.Rptr. 546], which had concluded a car rental agency's surety bond did not provide primary coverage under Insurance Code section 11580.9 for accidents involving its rented vehicles.

The legislative history of the 1984 amendment indicates that its purpose was to ensure that car rental agencies would be primarily liable for injuries arising out of the operation of their rented vehicles. "The end result is that a rental car agency can avoid having its auto liability insurance policy on the vehicle, which it owns and rents, to be considered primary insurance by depositing cash or posting a surety bond with DMV as a self-insurer meeting the financial responsibility limits of the Vehicle Code. [¶] This measure is intended to close this loophole except when an owner in the business of renting or leasing vehicles has leased the vehicle for a period of more than six months. [¶] Insurers are constantly finding their auto liability coverage considered as primary rather than excess when their insured rents a vehicle. Besides the insurer assuming a greater risk, the potential for auto insurance premiums rising is that much more prevalent." (Assem. Finance and Ins. Com. Rep. for Assem. Bill No. 3192 (May 5, 1984); *Interinsurance Exchange* v. *Spectrum Investment Corp.* (1989) 209 Cal.App.3d 1243, 1251 [258 Cal.Rptr. 43].) "The effect of this situation means that some companies (particularly rental car companies) can avoid having their auto liability on their vehicles from being considered primary insurance by depositing cash or surety bonds with DMV to meet the financial responsibility laws. Thus, in the event of an accident, the costs are always shifted to the insurance company of the other vehicle rather than to its own. [¶] This bill is intended to close this loophole by stating that cash deposit or surety bond filed with DMV to meet the financial responsibility requirements shall be considered a policy of automobile insurance for purpose of determining primary or excess coverage in the event of an auto collision." (Sen. Ins., Claims and Corp. Com. Rep. for Assem. Bill No. 3192 (June 20, 1984); *Interinsurance Exchange* v. *Spectrum Investment Corp.*, *supra*, 209 Cal.App.3d at p. 1251.)

In 1986, subdivision (g) of Insurance Code section 11580.9 was again amended to treat a report of governmental ownership as a policy of automobile liability insurance. (Stats. 1986, ch. 1142, § 2, p. 4104.) "A report of the Assembly Committee on Finance and Insurance dated July 8, 1986, and a report of the Senate Rules Committee, Office of Senate Floor Analyses, dated August 19, 1986, on Senate Bill No. 831, which proposed the foregoing amendment, state: 'For purposes of priority of policy provisions, self insurance, authorized bonds and cash deposits are considered as policies of

automobile liability insurance.' The Assembly Third Reading of Senate Bill No. 831 also points out: 'Self-insurance, authorized bonds and cash deposits are considered as policies of automobile liability insurance for purposes of priority of policy provisions.' " (*Interinsurance Exchange* v. *Spectrum Investment Corp.*, *supra*, 209 Cal.App.3d at p. 1252.)

█ "Clearly, the language of [Insurance Code] section 11580.9, subdivision (g), as well as the legislative history of that subdivision, establish the legislative intent that cash deposits[, certificates of self-insurance and surety bonds] be considered as policies of automobile liability insurance within the meaning of subdivision (d) of that section, for the purpose of determining which policy of automobile liability insurance shall be primary and which shall be excess. It also appears one of the Legislature's purposes in enacting and amending subdivision (g) was to hold automobile rental agencies primarily liable when automobiles rented by them for a period of less than six months are involved in accidents when driven by renters whose own automobile liability insurance policies cover their losses when driving rented automobiles." (*Interinsurance Exchange* v. *Spectrum Investment Corp.*, *supra*, 209 Cal.App.3d at pp. 1252-1253; cf. *Government Employees Ins. Co.* v. *Carrier Ins. Co.* (1975) 45 Cal.App.3d 223, 228-229 [119 Cal.Rptr. 116].)

*Policy of Automobile Liability Insurance*

█ We first consider whether the car rental agreement constitutes insurance. █ "Ordinarily, where there is a risk of loss to which one party is subject based on contingent or future events and a contract which shifts that risk to another, together with a distribution of the risks among similarly situated persons, the contract is one of insurance." (*Hertz Corp.* v. *Home Ins. Co.* (1993) 14 Cal.App.4th 1071, 1077 [18 Cal.Rptr.2d 267]; accord, *Metropolitan Life Ins. Co.* v. *State Bd. of Equalization* (1982) 32 Cal.3d 649, 654 [186 Cal.Rptr. 578, 652 P.2d 426].) █ A car rental agreement which contains a provision indemnifying the renter from liability to third persons, up to a specified limit, resulting from an accident which occurs while the rented vehicle is in use constitutes insurance. (*Hertz Corp.* v. *Home Ins. Co.*, *supra*, at pp. 1077-1078; *Nathanson* v. *Hertz Corp.* (1986) 183 Cal.App.3d 78, 84 [227 Cal.Rptr. 799], disapproved on other grounds in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58]; compare *Transportation Guar. Co.* v. *Jellins* (1946) 29 Cal.2d 242 [174 P.2d 625] [motor truck maintenance contracts in which maintenance company agreed to cause the trucks to be insured is not a contract of insurance]; *Truta* v. *Avis Rent A Car System, Inc.* (1987) 193 Cal.App.3d 802, 815 [238 Cal.Rptr. 806] [car rental agency's collision

damage waiver is not an insurance agreement].) This is so even where the liability insurance/car rental agreement is effectuated by a certificate of self-insurance. (*Nathanson* v. *Hertz Corp., supra,* 183 Cal.App.3d at p. 85.)

 The car rental agreement in this case provides that Grand will indemnify the renter for liability to third persons arising out of operation of the rented vehicle. The provision is contained in a paragraph entitled "Liability Insurance." Moreover, the paragraph expressly provides that the liability "coverage" will be provided to the renter in accordance with the terms and conditions of "a standard automobile liability insurance policy." The paragraph further provides that Grand may provide liability coverage under a certificate of self-insurance or an insurance policy. All of the elements of an insurance contract are contained in the car rental agreement. In addition, it is apparent from the language of the provision that Grand understood the agreement served as insurance. The indemnification provisions are expressly referred to as liability insurance. In counterpoint, the car rental agreement specifically provides that the collision damage waiver is not insurance.[6] Finally, Grand allocates a portion of the rental fee to liability insurance, sets up reserves, hires investigators and retains attorneys to settle and defend third party claims. We conclude the car rental agreement is a contract of insurance.

As noted previously, the car rental agreement specifically provides that the automobile liability insurance may be provided by Grand in the form of a certificate of self-insurance. Grand has elected to provide the insurance coverage by means of such a certificate. Pursuant to Insurance Code section 11580.9, subdivision (g), a certificate of self-insurance is a policy of automobile liability insurance. Accordingly, we conclude the car rental agreement, which is a contract of insurance, and the certificate of self-insurance, which is the means of effectuating the contract of insurance, operate together to constitute a policy of automobile liability insurance within the meaning of Insurance Code section 11580.9, subdivision (d). (Cf. *20th Century Ins. Co.*

---

[6] In No. B073487, Grand contends that the agreement is merely one of indemnification and not one of insurance, because it was limited to the minimum financial responsibility requirement. (The liability limits in the other agreements exceeded the minimum financial responsibility requirement.) It argues that since it was already liable as an owner of the vehicle for those minimum limits, it did not distribute any risk among its renters. (Veh. Code, §§ 17150, 16020, subd. (a), 16056, subd. (a).) We are not persuaded by this contention. Although the owner of a vehicle is secondarily liable up to the minimum financial responsibility limits for injuries to third persons arising out of the operation of its vehicle, the driver is primarily liable and must indemnify the owner for any liability the owner must assume. (Veh. Code, § 17153.) Under the terms of the car rental agreements, Grand shifted the risk of primary loss from renters to itself and distributed that risk among all renters of its vehicles by means of the car rental fee.

v. *Liberty Mut. Ins. Co.* (9th Cir. 1992) 965 F.2d 747, 750-751 [language of car rental agreement incorporated into automobile liability insurance policy].)

*Priority of Coverage*

We have concluded the car rental agreements together with the certificate of self-insurance constitute policies of automobile liability insurance affording coverage to the rented cars. There is no dispute that insurers issued policies of automobile liability insurance which also afforded coverage to the rented cars. Thus, the priority of coverage provisions of Insurance Code section 11580.9 must next be considered.

Insurance Code section 11580.9, subdivision (d) provides that, where two policies of automobile liability insurance apply to the same automobile in an occurrence generating liability to third persons, the policy of insurance in which the automobile is "described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess." This conclusive presumption requires that the primary policy "particularize" the vehicle. (*Hartford Accident & Indemnity Co.* v. *Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1297-1298 [260 Cal.Rptr. 190]; *Interinsurance Exchange* v. *Spectrum Investment Corp.*, *supra*, 209 Cal.App.3d at p. 1253.) There is no dispute that the rented cars are not described or rated as owned automobiles in insurers' policies. It is also apparent that there is nothing in the certificate of self-insurance which describes or rates the vehicles owned by the applicant for the certificate. The question remains whether Grand's policies of automobile liability insurance, which include the car rental agreements as well as the certificate of self-insurance, describe the rented cars as owned vehicles. We answer this question in the affirmative.

The car rental agreement describes a particular vehicle as the rented car. The description includes make, model, color and license number. The liability insurance provision of the car rental agreement refers to the rented car. The liability insurance covers the described rented vehicle and no other. We conclude the rented cars are described in Grand's policies of automobile liability insurance. There is no question that the rented cars are owned by Grand. Accordingly, the conclusive presumption of Insurance Code section 11580.9, subdivision (d) applies. Grand's policies of automobile liability

insurance are the primary policies and insurers' policies of automobile liability insurance are the excess policies.[7]

Such a conclusion not only satisfies the strict letter of the statute, but also coincides with the obvious and oft-stated legislative intent. The Legislature has made it abundantly clear that car rental agencies should bear the primary responsibility for coverage of their rented cars, whether insurance is provided by an insurance policy, certificate of self-insurance, cash deposit or surety bond, and the renters' insurers should bear only excess responsibility. "The fundamental rule in construing a statute is that the court should ascertain the intent of the Legislature in order to effectuate the purpose of the law." (*Interinsurance Exchange* v. *Spectrum Investment Corp.*, *supra*, 209 Cal.App.3d at p. 1252; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)[8] The legislative intent in this case is effectuated by a construction of the priority of coverage statute treating all forms of financial responsibility the same for purposes of priority of coverage.[9]

We recognize that our conclusion appears inconsistent with the holding of *Interinsurance Exchange* v. *Spectrum Investment*, *supra*, 209 Cal.App.3d 1243, a 1989 decision of Division One of this appellate district. The *Spectrum* court concluded a cash deposit made by a car rental agency pursuant to Vehicle Code section 16054.2 did not provide primary coverage to renters covered by their own automobile liability insurance policies. The *Spectrum* court, however, stressed the obvious legislative intent to make car rental agencies primarily responsible for automobile liability insurance for their

---

[7]Since the rented car is "described . . . as an owned vehicle" in the automobile liability insurance policy, it need not also be "rated as an owned vehicle." (*Ohio Cas. Ins. Co.* v. *Aetna Ins. Co.* (1978) 85 Cal.App.3d 521, 524 [149 Cal.Rptr. 562].)

[8]Legislative intent may be ascertained from legislative committee reports. (*Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 427 [173 Cal.Rptr. 917], disapproved on other grounds in *Laird* v. *Blacker* (1992) 2 Cal.4th 606, 616 [7 Cal.Rptr.2d 550, 828 P.2d 691].) Grand points out that the Legislature has declined to adopt amendments to the statutory scheme which would have resolved any doubts about the propriety of our holding. This, however, is not convincing proof of a contrary legislative intent. (*Provigo Corp.* v. *Alcoholic Beverage Control Appeal Bd.* (1994) 7 Cal.4th 561, 568 [28 Cal.Rptr.2d 638, 869 P.2d 1163].)

[9]Since we have concluded the conclusive presumption of Insurance Code section 11580.9 applies, we need not discuss the effect of any competing other insurance clauses contained in Grand's policy and insurers' policies. We also need not address whether Grand is required by statute to extend liability insurance to permissive users under Insurance Code section 11580.1, since in this case, Grand has extended liability insurance to renters. (*Hertz Corp.* v. *Home Ins. Co.*, *supra*, 14 Cal.App.4th at p. 1078; *Alderson* v. *Insurance Co. of North America* (1990) 223 Cal.App.3d 397, 409, fn. 7 [273 Cal.Rptr. 7]; cf. *Interinsurance Exchange* v. *Spectrum Investment Corporation*, *supra*, 209 Cal.App.3d at pp. 1256-1258.)

rented vehicles. In addition, although the *Spectrum* court was concerned with a cash deposit which contained no description of the owned vehicle, just as the certificate of self-insurance contains no description of the owned vehicle in this case, no argument was made to the *Spectrum* court that the car rental agreement, which does describe the owned vehicle, should be considered part of the policy of automobile liability insurance.[10]

### DISPOSITION

The judgments in No. B073847 and B073108 are affirmed. The judgment in No. B073396 is reversed. All parties shall bear their own costs on appeal.

Turner, P. J., and Godoy Perez, J., concurred.

The petition of appellant Grand Rent A Car Corporation for review by the Supreme Court was denied October 13, 1994.

---

[10]The car rental agreement in *Spectrum* provided in pertinent part: "10. DAMAGE EXCLU-SIONS/RENTAL RESPONSIBILITY/COLLISION DAMAGE WAIVER . . . Renter further represents that renter carries insurance for automobile liability, collision and comprehensive coverage with the insurance company stated on the reverse side hereof [Auto Club]. Renter understands that under certain conditions such insurance may be looked to cover renter's primary liability to others, if any, as well as for damage to the rented vehicle . . . . To the extent allowed by law, renter designates Budget as renter's agent to process and pursue claims under said policy listed on the reverse side hereof, to the extent necessary to protect and indemnify Budget pursuant to the terms hereof." We have taken judicial notice of the appellate file in the *Spectrum* case (No. B029357).