[No. B043798. Second Dist., Div. Three. Sept. 4, 1990.]

CARL ALDERSON et al., Plaintiffs and Appellants, v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant and
Respondent.

COUNSEL

Tweedy & Kerr, James R. Tweedy and Donald C. Lozano for Plaintiffs and Appellants.

Hagenbaugh & Murphy, William D. Stewart and Craig D. Aronson for Defendant and Respondent.

OPINION

**DANIELSON, Acting P. J.**—Carl Alderson (Carl) and Seiko Alderson (Seiko; collectively, Aldersons), husband and wife, appeal from a judgment in favor of Insurance Company of North America (INA) and from an order denying their motion for a new trial or to vacate the judgment and enter a different judgment.

We reverse the judgment and order.

PROCEDURAL AND FACTUAL STATEMENT

On or about October 5, 1983, Wilma Buttz Watson (Wilma) and Kelly Watson (Watson) rented an automobile from Spectrum Investment Corporation, dba Budget Rent A Car and Budget Rent A Car of San Fernando Valley (Budget). On or about October 27, 1983, the automobile, which was driven by Watson, collided with a motorcycle operated by Carl. Carl incurred medical and hospital expenses in the sum of $67,507.74 and a loss of earnings in the sum of $32,354.

In November 1987, the Aldersons and defendant Watson entered into a stipulation for entry of judgment, including a covenant not to execute, and on March 11, 1988, that stipulation was filed and a judgment based on it was entered in Los Angeles Superior Court case No. EAC 45659 against Watson, in the sum of $475,000 in favor of Carl, and the sum of $40,000 for Seiko, his wife.

Allstate Insurance Company paid its policy limits in the amount of $100,000 to Carl and $6,250 to Seiko on behalf of Wilma, its insured. Mercury Casualty Insurance Company paid the policy limits in the sum of $15,000 each to Carl and Seiko in behalf of Watson, its insured.

By letter dated April 5, 1988, the Aldersons notified INA, the insurer of Budget, of the above facts and demanded payment by INA of the sum of

$360,000 on behalf of Carl and the sum of $18,750 on behalf of Seiko. INA did not respond to that letter.

On May 13, 1988, the Aldersons filed a complaint for declaratory relief and to enforce a judgment against INA; Budget was not a party to this action. In sum, the Aldersons sought a declaration that Kelly Watson was an insured under the policy issued by INA to Budget and that Carl and Seiko were entitled to recover, respectively, the sums of $360,000 and $18,750 from INA pursuant to that policy.

In its first amended answer filed on December 9, 1988, INA denied generally the material allegations of the complaint.

On December 8, 1988, INA filed a motion for summary judgment on the ground that, as a matter of law, INA's policy issued to Budget expressly excluded coverage for renters (permissive users) of Budget's vehicles,[1] and that this exclusion is valid and bars the Aldersons' claim against INA. The motion was accompanied by a separate statement of undisputed facts.

In a supporting declaration Richard Shapiro (Shapiro), Budget's vice-president stated that in 1983 Budget contacted INA for insurance to cover liability arising from operation of its vehicles by employees only. It did not seek coverage for liability caused by operation of its vehicles by renters since Budget believed it already provided for such coverage by maintaining a cash deposit with the Department of Motor Vehicles (DMV) continuously from August 4, 1977. Exhibit "A" to the motion was an "Acknowledgement of Deposit," relating to section 16002 of the Vehicle Code, a part of the Financial Responsibility Laws, issued to Budget by the DMV, dated August 4, 1977.

Exhibit "C" to the motion for summary judgment was a copy of an endorsement No. 26, captioned "Agreement Re Reformation" and dated December 5, 1988, which was intended to reform the 1983 policy issued to Budget by INA, in order to avoid any uncertainty arising from the original policy regarding insurance coverage for renters of Budget's vehicles.

On December 22, 1988, the Aldersons filed opposition to the motion. In sum, they asserted that the purported exclusion of permissive users in the subject liability policy was void as contra to public policy in that there was

---

[1] In pertinent part this exclusion, endorsement 7 in the original policy and replaced by endorsement 22 in the policy, which was in effect at the time of the accident, expressly excluded coverage for liability arising out of the operation of Budget's autos while they are rented to others except where the liability is solely caused by improper inspection, servicing or repair of the autos by Budget.

no provision in the policy, as mandated by Insurance Code section 11580.1, subdivision (a)(2), for either underlying insurance provided by the insured or a retained limit of self-insurance by the insured. The Aldersons also argued that reformation of the subject policy to provide for a retained limit of self-insurance under that statute was improper since there was no mutual mistake of fact made by INA and Budget as to the provisions of the original policy.

In their reply filed December 30, 1988, INA took the position that the absence of a provision in the policy expressly stating the policy was conditioned on Budget maintaining the requisite retained limit of self-insurance did not affect the validity of the policy and that, in any event, the policy was properly reformed to provide expressly for a retained limit of self-insurance by Budget through the DMV cash deposit.[2]

On January 6, 1989, following a hearing, the motion for summary judgment was denied without prejudice on the ground, inter alia, that triable issues of fact existed concerning whether the endorsement asserted by the reformation was always the intention of Budget and INA.

A court trial was held on March 1, 2, and 23, 1989. The uncontroverted evidence at trial established that both INA and Budget expressly intended that there would be no coverage under the subject policy for renters of Budget's vehicles except where an accident was due to a defect in the rented vehicle, e.g., faulty brakes. Moreover, both INA and Budget intended that Budget, whom INA understood to be a self-insurer, would itself provide coverage for liability caused by operation of its autos by renters in all other instances.

---

[2] In pertinent part the "Agreement Re Reformation," which was executed on December 5, 1988, by Shapiro, provided:

"(The parties agree that the policy as written correctly states the intent of the parties to the agreement.)

"       .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"[I]n order to clarify their original intent, the parties hereby reform said policy by adding the following provision:

" '[Budget] owns numerous motor vehicles that are rented to the public on a continual basis. It is [Budget's] experience that at substantially all times, certain of such vehicles have been in collisions in which third parties are claiming damages against [Budget]. [Budget] acknowledges that it is required, pursuant to California law, to be able to prove its ability to respond in damages following such a collision, and now complies, and intends to comply hereafter, with the minimum requirements of California law for proving ability to respond in damages.

" 'This policy provides for a retained limit of self-insurance equal to or greater than the limits specified in subdivision (a) of Section 16056 of the Vehicle Code, in the following particulars:

" ' "[Budget] represents that it has cash on deposit with the Department of Motor Vehicles in the manner specified in Vehicle Code Section 16054.2 and in the amount specified in Vehicle Code Section 16056(a) and that [Budget] intends to maintain such compliance with financial responsibility during the policy period." ' "

The evidence further revealed that Budget considered itself to have been self-insured continually from 1977, including the time of the subject accident in 1983. Shapiro, Budget's President, testified at trial that Budget considered itself to be a self-insurer with respect to renters of its vehicles, because Budget maintained a letter of credit for $35,000 with DMV. For at least six years prior to the existence of the subject policy, Budget held a certificate from the DMV dated August 4, 1977, entitled "Acknowledgement of Deposit," which Shapiro considered to be the requisite certificate from DMV approving its status as a self-insurer. This certificate remained in effect through the trial here.[3]

Shapiro further testified that Budget had its own claim department which administered its program of self-insurance. Budget's self-insurance program was funded by the setting aside of a reserve for anticipated claims. The record, however, does not reveal any evidence concerning the amount or nature of such reserve.

Also undisputed was the fact that the reformation agreement was signed by Shapiro on December 5, 1988, about four years after the policy was cancelled on September 24, 1984. In consideration for entering into the reformation agreement INA agreed to indemnify or reimburse Budget for its costs in this matter. Shapiro testified that no one had ever told him that self-insurance, or maintaining a certain cash deposit, was a condition precedent to obtaining or maintaining the INA policy. Ronald Moreland, a broker for INA, testified that he did not refer to Budget's status as a self-insurer in the subject policy, because he did not think it was necessary.

At the conclusion of the trial the court concluded the reformation of the policy was proper since it reflected the true intent of INA and Budget. The court then announced that the remaining issues, e.g., standing, were moot. Judgment in favor of INA was filed on April 13, 1989.

On April 26, 1989, the Aldersons filed a motion for a new trial or, alternatively, to vacate the judgment and to enter a new judgment. INA filed opposition to the motion.

On June 1, 1989, following a hearing, the court took the motion under submission.

On June 6, 1989, the court denied the motion in its entirety. This appeal followed.

---

[3] The "Acknowledgement of Deposit," which was admitted into evidence, recites that Budget was "a Depositor under the Compulsory Financial Responsibility Law . . . ." It makes no mention of "self-insurer," or "self-insurance."

## ISSUES PRESENTED

This appeal presents three basic issues: (1) do the Aldersons have standing to bring the subject action against INA and to challenge the reformation of the policy, (2) does the absence of an express provision in the policy requiring Budget to maintain the requisite retained limit of self-insurance render the exclusion of coverage for permissive users in the INA policy void, and (3) if such a provision is mandatory, did the trial court correctly find that the subject policy properly contains such provision based on the endorsement which was drafted to reform the policy to insert such provision?

## DISCUSSION

### I. *Standing of the Aldersons*

Issues regarding standing were raised but not determined by the trial court. ■ Based on our review of the record and applicable law we conclude that the Aldersons have standing to challenge the subject policy and its reformation.

It is of no legal import that the Aldersons were not parties to the policy or that the policy expressly excluded permissive users, i.e., Watson. The point remains that if the policy's exclusion was void, then Watson, as a permissive user of the insured's vehicle, would have been an "additional insured" under the policy. As such, Watson would be entitled to the same rights as the insured. The Aldersons' rights, if any, under the policy are derived from the judgment it had obtained against Watson, and thus, the Aldersons, as third party beneficiaries under the policy, are entitled to bring this action and to challenge the reformation of the policy. (See, e.g., Ins. Code, § 11580, subd. (b)(2); *Zander* v. *Texaco, Inc.* (1968) 259 Cal.App.2d 793, 803 [66 Cal.Rptr. 561]; *Shapiro* v. *Republic Indem. Co. of America* (1959) 52 Cal.2d 437, 440 [341 P.2d 289]; *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d. 659, 675-677, 680 [79 Cal.Rptr. 106, 456 P.2d 674]; cf. *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941, 943-944 [132 Cal.Rptr. 424, 553 P.2d 584] [covenant of good faith and fair dealing runs only to insureds, not to third party claimants]; *State Farm Mut. Auto. Ins. Co.* v. *Superior Court* (1989) 211 Cal.App.3d 5, 8-9 [259 Cal.Rptr. 50] [a conclusive judicial determination of liability is prerequisite for third party action for damages under Ins. Code § 790.03, subd. (h)].)

II.  *Absence From Original Policy of Express Provision for Retained Limit of Self-insurance Renders Exclusion of Permissive User Coverage Void*

A.  *Requirement of Express Provision in Policy for Retained Limit of Self-insurance*

■  The general statutory requirement is that an automobile liability policy must provide coverage for permissive users of the insured vehicles "to the same extent that insurance is afforded to the named insured." (Ins. Code, § 11580.1, subd. (b)(4) (section 11580.1(b)(4));[4] see also, *Metz* v. *Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45, 51 [109 Cal.Rptr. 698, 513 P.2d 922].)

There are some statutorily created exceptions to the requirement that all automobile liability policies must provide insurance coverage to permissive users of insured vehicles.

In this regard, Insurance Code section 11580.1, subdivision (a)(2) (section 11580.1(a)(2)), provides: "No policy of automobile liability insurance . . . covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered in this state . . . unless it contains the provisions set forth in subdivision (b) [e.g., insurance coverage for permissive users (§ 11580.1(b)(4)]. However, none of the requirements of subdivision (b) shall apply to the insurance afforded under any such policy . . . (2) if such policy contains an underlying insurance requirement, or provides for a retained limit of self-insurance, equal to or greater than the limits specified in subdivision (a) of Section 16056 of the Vehicle Code, i.e., $35,000.]"[5]

In the case at bench the subject policy did not contain an underlying insurance requirement; thus we are concerned only with the exception based on a "retained limit of self-insurance."

---

[4]Section 11580.1(b)(4) provides in pertinent part: "(b) Every policy of automobile liability insurance to which subdivision (a) applies shall contain all of the following provisions: . . . (4) Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his or her permission, express or implied, and within the scope of such permission."

[5]Vehicle Code section 16056, subdivision (a) provides in pertinent part that in the case of an accident resulting in bodily injury or death, the policy or bond must provide "a limit, exclusive of interest and costs, of not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, to a limit of not less than thirty thousand dollars ($30,000) because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in injury to, or destruction of property, to a limit of not less than five thousand dollars ($5,000) because of injury to or destruction of property of others in any one accident."

### 1. When the Policy Provides for a Retained Limit of Self-insurance the Policyholder Must Be a Self-insurer

■ The meaning of the phrase "a retained limit of self-insurance, equal to or greater than [$35,000]" in section 11580.1(a)(2) has not been defined statutorily or judicially.

One court has pointed out that "[t]he reference to self-insurance must be read in conjunction with the requirements for self-insurance set forth in Vehicle Code sections 16052 and 16053 (formerly [Veh. Code,] §§ 16055 and 16056 respectively). Otherwise an automobile liability insurer could completely evade the requirements of . . . section 11580.2 [*sic*, we find that reference should be to Insurance Code section 11580.1], subdivision (b) by providing for a so-called 'retained limit of self-insurance' in every policy issued, regardless of the [insured] policyholder's ability to respond." (*Lovy v. State Farm Insurance Co.* (1981) 117 Cal.App.3d 834, 860, fn. 25 [173 Cal.Rptr. 307].)

Thus, at a minimum, what is required under section 11580.1(a)(2) is that the insured be a self-insurer under the Vehicle Code. At oral argument counsel for INA conceded that the "retained limit of self-insurance" under section 11580.1(a)(2) requires the insured to be self-insured under the Vehicle Code. He argued, however, that Budget had met this requirement by maintaining a deposit of $35,000 with DMV pursuant to Vehicle Code section 16054.2. We reject that argument as meritless. Counsel confuses the $35,000 deposit with DMV, which is an alternative means of establishing proof of financial responsibility under the Financial Responsibility Laws,[6] with the statutorily prescribed method by which one becomes a self-insurer. The two procedures, and the two purposes, are not the same.

### 2. "Self-insurer" Is a Status Created by Statute

Neither the Vehicle Code nor the Insurance Code defines "self-insurer" or "self-insurance"; nor do they contain a listing of the duties and obligations of a "self-insurer" other than the procedure which a person must follow in order to qualify as a self-insurer. (Veh. Code, §§ 16052-16053.)

---

[6] Every driver or employer involved in an accident and required to report such accident by Vehicle Code section 16000 must establish proof of financial responsibility. (Veh. Code, § 16050.) "Proof may be established if the owner of the motor vehicle involved in the accident was a self-insurer . . . ." (Veh. Code, § 16052.) A person may qualify as a self-insurer by obtaining a certificate of self-insurance from DMV. (Veh. Code, §§ 16052, 16053.)

Alternatively, proof may be established by filing with the DMV satisfactory evidence of an automobile liability policy, or a bond, affording coverage for permissive users in the minimum amount of $35,000. (Veh. Code, §§ 16054, 16056, subd. (a); Ins. Code, § 11580.1, subds. (a)(2), (b)(4).) Or proof may be established "[b]y depositing with [DMV] cash in the amount specified in Section 16056[, i.e., $35,000]." (Veh. Code, § 16054.2.)

It is implicit in the term, "self-insurer," that such person maintains a fund, or a reserve, to cover possible losses, from which it pays out valid claims, and that the self-insurer have a procedure for considering such claims and for managing that reserve. By definition, "self-insurance" is "insurance of oneself or of one's own interests by the setting aside of money at regular intervals to provide a fund to cover possible losses . . . ." (Webster's New Internat. Dict. (3d ed. 1966) p. 2060.)

The Vehicle Code, as pointed out by the *Lovy* court, specifies the procedure by which a person may qualify as a self-insurer. "Any person in whose name more than 25 vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the department as provided in this article." (Veh. Code, § 16052.)

The DMV "may, *in its discretion*, upon application, issue a certificate of self-insurance when it is satisfied that the applicant . . . is possessed and will continue to be possessed of ability to pay judgments obtained against him in amounts at least equal to the amounts provided in Section 16056. The certificate may be issued authorizing the applicant to act as a self-insurer for either property damage or bodily injury or both . . . ." (Veh. Code, § 16053, subd. (a), italics added.) That statute also authorizes the department to cancel a certificate of self-insurance upon reasonable grounds after notice and a hearing. (Veh. Code, § 16053, subd. (b).)

Pursuant to the authority of Vehicle Code section 1651 the DMV has adopted regulations, which are set forth in title 13, California Code of Regulations, sections 100.50 through 100.90, to implement the authority of the DMV to issue or to cancel a certificate of self-insurance. Those regulations require that an audited financial statement of the applicant for the preceding three years accompany the application for issuance of a certificate of self-insurance, and annual statements must be submitted thereafter. Such statements shall include the opinion of a certified public accountant as to the current financial condition of the applicant. The regulations also require that the audited financial statement of the applicant must reflect a net worth of not less than $575,000 on the date of the application. (Cal.Code Regs., tit. 13, §§ 100.55 & 100.60.)

3. *A Cash Deposit With DMV as Proof of Financial Responsibility Does Not Qualify the Depositor as a Self-insurer*

INA has cited no authority for the proposition that a cash deposit with DMV in the sum of $35,000, pursuant to Vehicle Code section 16054.2, subdivision (a), is an element in qualifying as a self-insurer or in obtaining a certificate of self-insurance, nor that such a deposit even relates to self-

insurance. Based on our review of the law we find that there is no such requirement and that the deposit does not relate to self-insurance. Again, the two are not the same.

The function of the $35,000 cash deposit with DMV (Veh. Code, § 16054.2, subd. (a)) is simply one method by which the driver or owner of a motor vehicle which has been involved in a reportable accident may establish proof of financial responsibility as required by the Vehicle Code. Also, financial responsibility may be established by proof that the owner of the vehicle is a self-insurer. (Veh. Code, § 16052.) Thus, if a person has a certificate of self-insurance, issued by the DMV, a $35,000 cash deposit with DMV would be redundant, duplicative, and a volunteered action on its part, i.e., not mandated by law. The two are alternative methods of establishing proof of financial responsibility.

Since a self-insurer is not required to file a cash deposit with DMV in the sum of $35,000 in order to establish proof of financial responsibility, such a cash deposit cannot be construed to constitute the "retained limit of self-insurance, equal to or greater than [$35,000]" mandated by Insurance Code section 11580.1(a)(2), which is necessary in order to exclude coverage for permissive users from Budget's INA policy, which is the basic issue in this case.

Moreover, a cash deposit with DMV in the amount specified in Vehicle Code section 16056, subdivision (a), i.e., $35,000, cannot satisfy the requirement of Insurance Code section 11580.1(a)(2) of "a retained limit of self-insurance, equal to or greater than [$35,000]" for three additional reasons. First, if the Legislature had intended for that cash deposit to be the requisite "retained limit of self-insurance," then it could easily have said so, e.g., an automobile liability policy must provide coverage for permissive users equal to that of the insured, unless the insured deposits cash with the DMV in the amount specified in Vehicle Code section 16056, subdivision (a), i.e., $35,000. The Legislature did not do that.

Second, another compelling reason why the cash deposit with DMV cannot be the "retained limit of self-insurance" is that the term "retained limit" is defined as an amount "equal to or *greater* than" (Ins. Code, § 11580.1(a)(2), italics added) $35,000, while the cash deposit which must be filed with DMV to establish financial responsibility is precisely $35,000, "the amount specified in Section 16056." (Veh. Code, § 16054.2.) The two are not synonymous, they are not interchangeable.

Lastly, INA has cited no authority, and we have found none, for the proposition that a $35,000 cash deposit with DMV under Vehicle Code section 16054.2 constitutes a fund from which a self-insurer may cover the

liability of its permissive users. To the contrary, the court in *Interinsurance Exchange* v. *Spectrum Investment Corp.* (1989) 209 Cal.App.3d 1243 [258 Cal.Rptr. 43] held that such a cash deposit does not extend coverage to permissive users, i.e., renters of the insured's vehicles.[7] (*Id.* at pp. 1256-1258.)

In addition to the "retained limit of self-insurance" as the basis for exclusion of permissive user coverage under an insurance policy, section 11580.1(a)(2) also provides that a policy may exclude coverage for permissive users on the alternative basis that "such policy contains an underlying insurance requirement." " ' "Underlying Insurance" is any other insurance purchased by the insured which covers the same losses and which will be primarily liable therefor. [Citation.]' " (*Lovy* v. *State Farm*, *supra*, 117 Cal.App.3d 834, 860, italics omitted.) The underlying insurance exception in section 11580.1(a)(2) requires an underlying insurance policy which in fact affords coverage for permissive users. (*Harbor Ins. Co.* v. *KSCH, Inc.* (1989) 208 Cal.App.3d 965, 969 [256 Cal.Rptr. 499].) In this case the policy did not contain an underlying insurance requirement. Yet that exception provides guidance in construing the "retained limit of self-insurance" exception.

A statute must be construed to achieve harmony among its various provisions. (See, e.g., *Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].) Mindful of this principle, "the retained limit of self-insurance" exception must be construed in conjunction with its alternative, the "underlying insurance requirement" exception. If there were underlying insurance it would be required, by law, to afford insurance coverage to permissive users. (§ 11580.1(b)(4).) Therefore, to be in harmony, its alternative, the "retained limit of self-insurance," must in fact afford coverage to permissive users. Again, the cash deposit with DMV as proof of financial responsibility does not afford such coverage. (*Interinsurance Exchange* v. *Spectrum Investment Corp.*, *supra*, 209 Cal.App.3d at 1256, 1258.)

Thus, it is clear that the Legislature meant the "retained limit of self-insurance, equal to or greater than the limits specified in [Vehicle Code

---

[7] Prior to 1984, a self-insurer did not have to insure permissive users. (See, e.g., *Western Pioneer Ins. Co.* v. *Estate of Taira* (1982) 136 Cal.App.3d 174, 178-181 [185 Cal.Rptr. 887]; *Interinsurance Exchange* v. *Spectrum Investment Corp.*, *supra*, at 1257.) Effective 1984, however, a certificate of self-insurance was considered to be a policy of automobile liability insurance, and thus, subject to the requirement of section 11580.1(b)(4) that coverage be afforded to a permissive user. (See *Interinsurance Exchange* v. *Garcia* (1984) 160 Cal.App.3d 419, 425, fn. 5 [206 Cal.Rptr. 621]; *Interinsurance Exchange* v. *Spectrum Investment Corp., supra*, 209 Cal.App.3d 1243, at p 1257.)

section 16056, subdivision (a), i.e., $35,000]" to be something other than the $35,000 cash deposit with DMV under Vehicle Code section 16054.2.

4. *The Meaning of "Retained Limit of Self-insurance" Under Section 11580.1(a)(2)*

Based on our review of the applicable law we hold that the meaning of the phrase in section 11580.1(a)(2) that "the policy provides for a retained limit of self-insurance, equal to or greater than the limits specified in [Vehicle Code section 16056, subdivision (a), i.e., $35,000]" is that the policy in question must contain a recital to that effect and, in addition, that: (1) the insured must be a self-insurer as described in the Vehicle Code (Veh. Code, §§ 16052, 16053; see also, Cal. Code Regs., tit. 13, §§ 100.50, 100.90); (2) the insured agrees to maintain the status of self-insurer for the duration of the policy; and (3) the self-insurer must afford insurance coverage to its permissive users equal to the limits specified in Vehicle Code section 16056, subdivision (a).

The manner in which a proposed self-insurer can demonstrate that it is qualified to be a self-insurer, and can maintain that status, is to be determined by the DMV within statutory limits and in the exercise of its statutory discretion to issue or to cancel a certificate of self-insurance. (Veh. Code, §§ 16052, 16053; Cal. Code Regs., tit. 13, §§ 100.50-100.90.)[8]

An audited financial statement reflecting a net worth of not less than $575,000 is one factor to be considered in qualifying a self-insurer (Cal. Code Regs., tit. 13, §§ 100.55, 100.60); however, the DMV is entitled to weigh other factors as well. The DMV "may require a statement of claims and losses during the preceding three year period, a history of insolvency proceedings and any relevant additional information necessary to determine the continuing ability of the applicant to pay future claims." (Cal. Code Regs., tit. 13, § 100.65.) Such "relevant additional information" necessarily includes specifics concerning the reserve fund which a self-insurer, by definition, must maintain to act as a self-insurer.

Although neither the Vehicle Code, nor the regulations adopted by DMV with respect to self-insurers, address the maintenance of a reserve fund, we find that, implicit in its statutory authority to issue or to cancel a certificate of self-insurance, the DMV necessarily has the authority to require the applicant for or holder of such a certificate, in order to cover losses, to maintain a reserve fund in a manner which is satisfactory to the DMV. In determining whether to issue a certificate of self-insurance the DMV must

---

[8] At oral argument counsel for INA conceded that it was incumbent on INA to monitor the insured to ensure that the requisite "retained limit of self-insurance" was maintained during the policy period in order for the permissive user exclusion to remain valid.

be "satisfied that the applicant . . . is possessed and will continue to be possessed of ability to pay judgments obtained against him in amounts at least equal to the amounts provided in [Vehicle Code] Section 16056 [i.e., up to $35,000]." (Veh. Code, § 16053, subd. (a).) In determining whether to cancel a certificate of self-insurance the DMV necessarily makes a finding on that question. (Cal. Code Regs., tit. 13, § 100.90, subd. (a); see also, Veh. Code, § 16053, subd. (b).)

### B.  *Provision for a Retained Limit of Self-insurance Was Omitted From Original Policy*

■      Based on the foregoing it is clear that in order for the INA policy to exclude coverage for permissive users of Budget's insured vehicles, such policy must contain a provision "for a retained limit of self-insurance equal to or greater than [$35,000]" (§ 11580.1(a)(2)), as described above. It is undisputed that the policy, as originally drafted, failed to contain this provision. Accordingly, we conclude that the absence of such provision rendered the exclusion of coverage for permissive users in the original policy void as contrary to section 11580.1(b)(4).

### III.  *Reformation of Policy to Include Provision for Retained Limit of Self-insurance Was Ineffectual*

The Aldersons attack the endorsement (agreement re reformation) on two grounds: (1) the absence of a mutual mistake of fact precludes reformation; and (2) assuming, arguendo, reformation was proper, the policy as reformed still fails to satisfy the requirement of Insurance Code section 11580.1(a)(2) that the policy provide for a retained limit of self-insurance, equal to or greater than the limits specified in Vehicle Code section 16056, subdivision (a).

#### (1)  *Propriety of Reformation*

"When, through . . . a mutual mistake of the parties . . . a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." (Civ. Code, § 3399.)

■      "The purpose of reformation is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing. [Citation.]" (*Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 663 [297 P.2d 638].) "It is fundamental that a written contract may be reformed by a court of equity where, due to mutual

mistake on the part of the parties, it fails to express their true intentions. [Citations.] Moreover, it is settled that an insurance policy may be reformed to limit or exclude coverage if such was the intention of the parties, even where the rights of third party claimants who are not parties to the insurance contract are adversely affected. [Citation.]" (*Truck Ins. Exch.* v. *Wilshire Ins. Co.* (1970) 8 Cal.App.3d 553, 559 [87 Cal.Rptr. 604]; cf. *Insurance Co. of North America* v. *Bechtel* (1973) 36 Cal.App.3d 310, 316-318 [111 Cal.Rptr. 507].)

Mindful of the foregoing principles, we conclude that the uncontroverted evidence here establishes the requisite mutual mistake justifying reformation of the policy to reflect the true intent of the parties thereto, i.e., INA and Budget. Such evidence reflects that at all relevant times Budget considered itself to be a self-insurer within the meaning of the Vehicle Code and that both INA and Budget intended to exclude coverage for renters of Budget's vehicles under the INA policy. The evidence also reveals that both INA and Budget intended that Budget, as a self-insurer, would, instead, provide such coverage.

The Aldersons concede the above factual recital to be correct. They contend, however, that such facts do not justify reformation of the policy, because there was no evidence to show that INA and Budget had intended to or agreed to include a provision in the INA policy to the effect that Budget agreed to be self-insured for the duration of the policy or that the policy was contingent on Budget's status as a self-insurer. We reject that contention as an attempt to elevate form over substance. The essential fact is that both INA and Budget intended for Budget to be self-insured for the duration of the policy with respect to coverage for renters of Budget's vehicles. Inclusion of a provision in the policy by reformation to reflect that intent was therefore proper.

### (2) *The Policy as Reformed Does Not Meet the Requirements of a "Retained Limit of Self-insurance" Under Section 11580.1(a)(2)*

The Aldersons complain that the endorsement reforming the policy does not satisfy the requirement in Insurance Code section 11580.1(a)(2) that the policy provide for a retained limit of self-insurance, equal to or greater than the limits set forth in Vehicle Code section 16056, subdivision (a), i.e., $35,000.

Based on our analysis, *ante*, we agree.

Again, the meaning of the phrase "the policy provides for a retained limit of self-insurance, equal to or greater than the limits specified in [Vehicle Code section 16056, subdivision (a), i.e., $35,000]" is that the policy must

contain a recital to that effect and, in addition, the insured (1) must be a self-insurer, (2) must agree to maintain that status for the duration of the policy, and (3) must afford insurance coverage to its permissive users equal to the limits specified in Vehicle Code section 16056, subdivision (a).

The agreement re reformation in this case does not satisfy those requirements. Instead, it purports to equate the deposit of $35,000 with the DMV under the Financial Responsibility Law (Veh. Code, § 16054.2) as the "retained limit of self-insurance" under Insurance Code section 11580.1(a)(2).[9] As we pointed out, ante, that deposit does not constitute the requisite "retained limit of self-insurance."

■ The bare recital in a policy that it "provides for a retained limit of self-insurance, equal to or greater than the limits specified in subdivision (a) of Section 16056 of the Vehicle Code," is not enough. There must also be full compliance with the requirements for self-insurance. "Otherwise an automobile liability insurer could completely evade the requirements of Insurance Code section [11580.1,] subdivision (b) by providing for a so-called 'retained limit of self-insurance' in every policy issued, regardless of the policyholder's ability to respond." (*Lovy* v. *State Farm Insurance Co.*, *supra*, 117 Cal.App.3d 834, 860, fn. 25.) Thus, although the elements of being a self-insurer, and of self-insurance, may be subsumed in the recital that the policy provides for a retained limit of self-insurance, those elements must in fact exist and be provable in order for the policy to exclude insurance coverage for the permissive users of the insured's vehicles.

We conclude that neither the original policy nor the policy as reformed satisfies the requirement of Insurance Code section 11580.1(a)(2) that the policy provide for "a retained limit of self-insurance, equal to or greater than the limits specified in [Vehicle Code section 16054.2, subdivision (a), i.e., $35,000]." Accordingly, the policy's exclusion of coverage for permissive users is void.

### DECISION

The judgment and order are reversed. The cause is remanded for further proceedings consistent with this opinion, including further consideration by

---

[9] In pertinent part the "agreement re reformation" provided: " 'This policy provides for a retained limit of self-insurance equal to or greater than the limits specified in subdivision (a) of Section 16056 of the Vehicle Code, in the following particulars: " ' "[Budget] represents that it has cash on deposit with the Department of Motor Vehicles in the manner specified in Vehicle Code Section 16054.2 and in the amount specified in Vehicle Code Section 16056, subdivision (a) and that [Budget] intends to maintain such compliance with financial responsibility during the policy period.' "

the trial court of efforts, if any, by INA and Budget to reform the subject policy. Appellants to recover costs on appeal.

Croskey, J., and Hinz, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 13, 1990.