[No. B161761. Second Dist., Div. Eight. Mar. 25, 2004.]

SCHOOLS EXCESS LIABILITY FUND, Plaintiff, Cross-defendant and Respondent, v.
WESTCHESTER FIRE INSURANCE COMPANY, Defendant, Cross-complainant and Appellant.

COUNSEL

Harris & Green, Lon Harris, Gary L. Green and Gregory M. Heuser for Defendant, Cross-complainant and Appellant.

Bowman and Brooke, Jeffrey A. Swedo, Larry R. Ramsey and Dana K. Anderson for Plaintiff, Cross-defendant and Respondent.

Brown, Winfield and Canzoneri and J. Kenneth Brown for Independent Cities Risk Management Agency, Employment Risk Management Authority, Bay Cities Joint Powers Authority, Vector Control Joint Powers Authority, Central San Joaquin Valley Risk Management Authority, California Affiliated Risk Management Authority, North Valley Schools Insurance Group and Valley Insurance Group as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

Farmer, Murphy, Smith & Alliston, George E. Murphy, Suzanne M. Nicholson for Statewide Association of Community Colleges, Southern California Regional Liability Excess Fund and Northern California Regional Liability Excess Fund as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

## OPINION

**COOPER, P. J.**—Westchester Fire Insurance Company (Westchester) appeals from the trial court's summary judgment declaring Westchester liable for coverage for injuries sustained by a student passenger who fell out of his wheelchair in 1994 while in a school bus owned by the William S. Hart Union High School District (the School District.) Westchester and respondent Schools Excess Liability Fund (SELF) each advanced about $2.1 million to fund settlement on behalf of Santa Barbara Transportation (SBT), which contracted to operate buses owned by the School District; an employee of SBT was driving the school bus when the accident happened.

Coverage issues as between Westchester and SELF were reserved and are the subject of this lawsuit. The School District may have assessed SBT $900 per bus in exchange for being included in the School District's coverage for bus operations; that coverage was provided by a "Memorandum of Coverage" issued by SELF, a California Joint Powers Authority.[1] Westchester, a commercial insurer, issued an excess policy separately maintained by SBT. The trial court decided for SELF on two independent grounds: 1) Westchester's belated agreement with SBT to change its policy with SBT to disallow coverage of the subject incident was invalid; and 2) pursuant to Government

---

[1] The SELF Memorandum of Coverage (MOC) provided coverage inter alia to "Any person while using an owned automobile, or non-owned automobile, or a hired automobile and any person or organization legally responsible for the use thereof . . . provided the actual use of the automobile is by or with the permission of the Covered Party."

Westchester's policy provided in part: "If other valid and collectible insurance is available to the insured which covers a loss also covered by this policy, other than insurance that is specifically purchased as being in excess of this policy, this policy shall operate in excess of, and shall not contribute with such other insurance."

Code section 990.8, SELF's coverage is not "other insurance" to which Westchester's policy would be excess. Concluding that a material issue of fact exists as to the issue of mutual mistake of fact regarding the Westchester/SBT policy and that the issue was not waived, we shall reverse the judgment and remand for further proceedings.

## PROCEDURAL HISTORY

Student Richard Houghton was severely injured on April 22, 1994, while riding in a School District-owned bus leased by SBT and driven by an SBT employee, whose negligence was the sole cause of the student's injuries.[2] Houghton's action against SBT settled in May 1999; appellant and respondent each contributed $2.1 million toward the total payment of $8 million.[3] On May 24, 2000, SELF filed its action for declaratory relief seeking a declaration the SELF MOC excludes coverage for SBT and the driver regarding the Houghton settlement; Westport and Westchester have a duty to indemnify SBT and the driver for the Houghton settlement under the terms of their policies; and Westport or Westchester must reimburse SELF's $2.1 million payment to the Houghton settlement. SELF based its complaint on recovery on theories of equitable subrogation, contribution, and indemnity.

SELF alleged it is a Joint Powers Authority and a California public entity formed pursuant to Government Code section 6500 et seq. Moreover, the complaint alleged that defendants' insurance policies provided coverage and such coverage was excluded under the MOC issued by SELF. Furthermore, the MOC allegedly contains an endorsement naming SBT as an "additional Covered Party" and the MOC specifically excludes coverage for the sole negligence of any "additional Covered Party."

---

[2] SBT and the driver allegedly executed a stipulation in the Houghton lawsuit in which they "stipulated that the accident that injured Richard Houghton was their sole fault and specifically stated that no other person or entity had any fault, responsibility, or legal liability for the accident."

[3] Westport Insurance Corporation, a defendant in the SELF action but not a party to this appeal, allegedly provided primary commercial general liability coverage to SBT and the driver, refused to defend them, but funded $3 million of the settlement. According to SELF, Westport was the primary insurer for SBT and the driver, and SBT's excess policy was with Westchester. Moreover, SBT was an "additional covered party" in an underlying primary risk pool called the Alliance of Schools for Cooperative Insurance Programs (ASCIP). Excess coverage above ASCIP's MOC was, according to SELF, provided by SELF. Westchester claimed to be surprised by the contention that SELF's coverage was excess, stating that was not the basis for SELF's complaint.

Over the objection of SELF, Westchester cross-complained, seeking recovery of its $2.1 million payment in the Houghton settlement, relying on its recent discovery of the alleged mutual mistake.[4] Westchester contended that the initial intent of SBT and Westchester, as discovered by Westchester in 2001, was "not to insure the buses owned by the District under the SBT policies" and, contrary to a provision in the MOC, not to exclude coverage by SELF for the sole negligence of any "additional covered party" such as SBT. In about December 2001, SBT and Westchester mutually executed an endorsement to the subject policy, made retroactive to January 30, 1994, purportedly to express the original, mutual agreement of the parties that the Westchester policy was not to provide coverage for SBT's liability arising out of the operations of non-owned vehicles owned by the School District for which coverage was provided through the School District's insurance program. The validity of this "Non-Owned Auto Endorsement" is the first issue presented on appeal.

SELF answered the cross-complaint and filed a motion for summary judgment (MSJ). After opposition was filed, SELF filed an ex parte application for permission to file an amended complaint, to reopen discovery regarding the Non-Owned Auto Endorsement, and to continue the trial date and the MSJ. Particularly concerned about the recent production of evidence (the endorsement/exclusion) that might exclude coverage by Westchester, the court granted additional time for limited discovery, took the MSJ off calendar, granted both sides leave to amend the pleadings, and told Westchester this would give it an opportunity to consider whether any further defenses should be raised by answer or whether further claims should be made in the cross-complaint.[5]

Thereafter, SELF amended its first and operative second amended (SAC) complaints. In its SAC for declaratory relief, equitable subrogation, equitable contribution, and equitable indemnity, SELF alleged that Westchester

---

[4] Following SELF's demurrer to the cross-complaint, Westchester filed the operative First Amended Cross-Complaint for declaratory relief, reformation, equitable subrogation, equitable contribution and equitable indemnity. The reformation cause of action was not one for the alleged mutual mistake between SBT and Westchester at issue in this appeal but is to reform the alleged unilateral mistake by which SELF's endorsement excluded coverage for the "sole negligence" of any "additional covered party." SBT was an "additional covered party" under the MOC and admitted to sole negligence in the Houghton lawsuit.

[5] At the hearing on January 25, 2002, counsel for Westchester argued that he had provided the final signed endorsement from SBT to opposing counsel within a day of receiving it and they did not at that time ask for more time even though the discovery cutoff was coming up shortly and Westchester was eight days from filing its MSJ. To the contrary, although given the names and number of the pertinent agent, plaintiff did not contact him or schedule a deposition.

provided excess commercial general liability coverage to SBT and the driver for amounts up to $12 million, above the $3 million provided by Westport Insurance Corporation, which provided primary coverage. Furthermore, SELF's MOC was allegedly "not an insurance policy" and therefore was not "other insurance" subject to any other policy. In addition, SELF's MOC allegedly specifically excluded coverage for the sole negligence of any "additional covered party," and SBT is named in the MOC as an "additional covered party." Westchester amended its answer but did not include a defense of mutual mistake or amend its cross-complaint to assert a cause of action for reformation.

SELF's second MSJ was based on coverage under Westchester's policy; invalidity of the retroactive endorsement between Westchester and SBT in December 2001; and the argument that coverage, if any, by SELF was not "other insurance" and therefore Westchester's policy must be exhausted before SELF's coverage was brought into play. That is, even if there was coverage by SELF, Westchester's layer of coverage precedes SELF's.

The operative second MSJ was argued June 17, 2002, and granted on the ground that SELF's MOC was "not insurance pursuant to Government Code Section 990.8," that the Westchester policy covered the *Houghton* loss, and the Westchester/SBT Non-Owned Auto Endorsement was invalid. In giving its tentative ruling, the trial court accurately noted that the case involves 1) whether the endorsement is retroactive and 2) whether the District's agreement to indemnify SBT changed respondent from noninsurance under Government Code section 990.8 to "insurance." As to the first question, the court believed that reformation could not be retroactive and, in any event, there was "no cause of action for reformation in this case." Moreover, the court was concerned about harm to SELF, asking "Is that [the reformation agreement] a mistake or is that a retroactive endorsement trying [to] protect oneself after the event? There is a big difference there." The court was concerned that the parties' "reformation" stripped the court of its equitable power in weighing the different factors.

As to the second question, the court found "as a matter of law, that SELF did not become insurance when the District agreed to indemnify SBT because its purpose was to enhance the services of the District. And as long as that is

that limited purpose, it is my opinion that SELF has not transmuted itself into insurance."[6] Judgment was entered July 9, 2002.[7]

On September 6, 2002, the trial court denied Westchester's motion for new trial and/or to vacate judgment.[8] In giving its tentative ruling, the court characterized the case as one "in which two people on their own decide two years later . . . to change the contract to the detriment of a known entity, SELF." The court was particularly concerned that Westchester had no request for judicial reformation and deemed judicial intervention "inappropriate . . . after mutually agreed upon modification" executed by the parties pursuant to Civil Code section 1698(d).[9] Moreover, the court concluded that the absence of a request for judicial reformation "creates possibility of collusion. Third parties can be totally harmed" and the "actions here smack of vigilantism in terms of retroactive amendment."

Westchester appeals from the judgment.

## CONTENTIONS ON APPEAL

Westchester contends it is not liable for coverage because: 1. The trial court erred in not giving retroactive effect to Westchester's non-owned auto endorsement; 2. SELF's coverage afforded to a non-pool member is "insurance" subject to Westchester's "other insurance" clause.

---

[6] The minute order of June 17, 2002, granting the MSJ, states: "Unrefuted moving party as a matter of law under the undisputed facts was not insurance pursuant to Government Code Section 990.8, that the accident in issue was covered under the Westchester policy and that the purported retroactive endorsements between Santa Barbara Transportation and Westchester is invalid . . . ."

[7] The parties thereafter stipulated to a reduction in the prejudgment interest percentage, from 10 percent to 7 percent, and the court signed the stipulation to correct judgment nunc pro tunc.

[8] The principal basis for the motion was Westchester's argument that where there was a mutual mistake, there need not be a formal reformation action, citing *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516 [117 Cal.Rptr.2d 220, 41 P.3d 46], *Truck Ins. Exch. v. Wilshire Ins. Co.* (1970) 8 Cal.App.3d 553 [87 Cal.Rptr. 604], *Alderson v. Insurance Company of North America* (1990) 223 Cal.App.3d 397 [273 Cal.Rptr. 7]; and *Orange County Water Dist. v. Association of Cal. Water etc. Authority* (1997) 54 Cal.App.4th 772 [63 Cal.Rptr.2d 182]. Westchester again argued the retroactive application of the endorsement and that SELF's MOC was insurance.

[9] Thus, the court found the absence of pleading reformation, whether or not required, to be a "red herring." The court agreed that reformation "doesn't have to be specifically pled," but stated that Westchester did not want judicial reformation of the policy. Westchester did not contradict that interpretation but argued that judicial reformation was "moot" because the parties' expression of their own initial intent was sufficient. Faced with the court's repeated statement that judicial reformation was not sought, whether or not pled, Westchester was vague about any request to ask the court to decide on reformation.

## DISCUSSION

1. *The trial court erred in deciding the validity of Westchester's non-owned auto endorsement on summary judgment.*

Westchester contends that, through a mutual mistake of fact, its policy as originally issued did not exclude the non-owned auto exposure of SBT for its operation of the District's buses but that the mutual mistake was corrected through an endorsement mutually executed by Westchester and SBT, its insured. Furthermore, Westchester contends it properly sought reformation; was not required to plead a separate cause of action for "reformation"; demonstrated substantial and undisputed grounds for reformation; that SELF has no legal or factual basis to assert it was prejudiced by the non-owned auto endorsement; and the endorsement applies to exclude coverage under the Westchester policy.

Westchester's statement of facts includes evidence that it was the mutual understanding of SBT and Westchester from the outset that SBT's operation of buses owned by the School District were not covered under the Westchester policy but that such coverage was to be provided by the School District's own insurance program. SELF's MSJ contains evidence to the contrary.[10]

The court in *Alderson v. Insurance Company of North America, supra,* 223 Cal.App.3d 397, 412, relied on by Westchester, concluded that inclusion of a provision in the policy by reformation to reflect the intent of the contracting parties was proper " '*even where the rights of third party claimants who are not parties to the insurance contract are adversely affected.* [Citation.]' (*Truck Ins. Exch. v. Wilshire Ins. Co.* (1970) 8 Cal.App.3d 553, 559 [87 Cal.Rptr. 604]; cf. *Insurance Co. of North America v. Bechtel* (1973) 36 Cal.App.3d 310, 316–318 [111 Cal.Rptr. 507].)" (Italics added.) Including the provision by reformation was found to be proper in *Alderson, supra,* 223 Cal.App.3d 397, 412, to reflect the undisputed intent of the contracting parties. The policy as reformed in *Alderson,* however, did not meet the

---

[10] For example, there was a 1999 tender letter from SBT to Westchester, which SELF contends "contradicts the alleged 'intent' of SBT and Westchester regarding use of District buses, as SBT's tender letter to Westchester and Westchester's response thereto do not mention any such intent." The letter states that in addition to tendering the *Houghton* complaint to the District in 1995, SBT "is now tendering this claim to you [Westchester] with the demand that you defend and indemnify us to the limits of your insurance policy . . . ." In addition, there is evidence that the purported reformation was accompanied by Westchester's agreement to indemnify SBT from any loss.

statutory requirements for self-insurance. The court found that neither the original policy nor the policy as reformed satisfied the statutory requirements for a "retained limit of self-insurance" and thus concluded that the policy's exclusion of coverage for permissive users was void. (*Alderson, supra,* 223 Cal.App.3d 397, 413.) Thus, the language about the adversely affected rights of third party claimants is dicta.[11] We are not persuaded that the trial court was compelled to find in Westchester's favor based on the attempted reformation reached by Westchester and SBT after this litigation commenced.

■ We agree with the trial court that where the parties attempt reformation years after the policy was executed and only after the adverse impact to third parties is apparent, such prejudice should be considered in determining the initial intent of the contracting parties. Under such circumstances, although they may eventually achieve reformation, they are not free merely to decide between themselves that something other than their clear written provision was their initial intent. A court of equity must look at the whole picture in deciding if there was mutual mistake that permits reformation.

Civil Code section 3399 provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention so far as it can be done without prejudice to rights acquired by third persons, in good faith, and for value."[12] Given the conflicting evidence about intent in the MSJ and opposition, there is a material issue of fact as to mutual mistake between SBT and Westchester sufficient to overcome the MSJ.

We next address whether Westchester's primary position in the trial court not to allow the trial court to decide the applicability of the mutual mistake doctrine precludes its argument on appeal by in effect forcing the trial court not to be a gatekeeper in the decision on mutual mistake or to decide that a matter of law mutual mistake existed and resulted in the desired reformation. On appeal as well, Westchester initially eschewed a trial on the issue of mutual mistake, instead asking for directions that the non-owned auto endorsement "reflects the original mutual intent of the parties at the inception of the Westchester Fire policy and should be applied retroactively to the *Houghton* loss." On the other hand, without citation to the record, Westchester

---

[11] Moreover, as noted by the trial court, the third party in *Alderson* was allowed to intervene and the court in *Alderson* was also allowed to play its part.

[12] "It is well settled that the remedy of reformation is equitable in nature and not restricted to the exact situations stated in section 3399. (*Demetris v. Demetris* (1954) 125 Cal.App.2d 440, 443 [270 P.2d 891].)" (*Jones v. First American Title Ins. Co.* (2003) 107 Cal.App.4th 381, 388 [131 Cal.Rptr.2d 859].)

argued in its reply brief that the "trial court had the authority to review the evidence to determine whether there was a mutual mistake in the issuance of the excess policy and that the Non-Owned Auto Endorsement properly reflects the original intent of the parties. That the trial court refused to exercise this authority, despite the express request of Westchester Fire, is one of the harmful errors which resulted in the judgment below."

At the very end of the hearing on the new trial motion, Westchester's counsel stated that the "court did have the power to exercise—to interpret the endorsement *and to determine whether there was a mutual mistake of fact . . . .*" (Italics added.) Similarly, while reluctant to make the argument, counsel for Westchester at oral argument in this court eventually granted as an alternative ground for reversal that the trial court could exercise its gatekeeper role to determine if there had been mutual mistake.

█ In sum, our review of the record demonstrates that Westchester raised the issue of mutual mistake in its cross-complaint[13] and adequately, though reluctantly, would have allowed the trial court to decide the issue of mutual mistake. Given our appellate function in reviewing summary judgment (see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493]), we conclude a material issue of fact exists, was not waived, and the summary judgment must be reversed.

2. *SELF's coverage afforded to a non-pool member is not "insurance" subject to Westchester's "other insurance" clause.*

Division Three of this court in *City of South El Monte v. Southern Cal. Joint Powers Ins. Authority* (1995) 38 Cal.App.4th 1629, 1634 [45 Cal.Rptr.2d 729], sets forth an excellent history of municipal joint liability pools. "The legislative response to the municipal insurance crisis and implementation of the pooling arrangement was Senate Bill No. 2054. The purpose of this bill was to amend section 990.8 and recognize these self-insuring pools *as an alternative to insurance* and remove them from regulation under the Insurance Code." (*Ibid.*, italics added.) In *Orange County Water Dist. v. Association of Cal. Water etc. Authority, supra,* 54 Cal.App.4th 772, 774, footnote omitted, the court was similarly "asked to consider whether a public entity self-insurance pool, formed by several water agencies pursuant to a joint exercise of powers agreement, is 'insurance' subject to a commercial insurer's policy provision that its coverage will not apply until all 'other insurance' is exhausted. Because the statutes authorizing creation of public

---

[13] Westchester also raised mutual mistake in the agreement between SBT and the District in the trial court as a ground for reformation of that agreement. As SELF correctly emphasized in its briefs and at oral argument, that request for reformation is not a request for reformation of the subject contested retroactive endorsement between SBT and Westchester.

entity self-insurance pools specifically provide such arrangements *are not* to be considered insurance (Gov. Code, § 990.8, subd. (c)), we conclude the 'other insurance' clause is not applicable and affirm the judgment." (Accord, *Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.* (2003) 106 Cal.App.4th 293, 297 [130 Cal.Rptr.2d 728] ["Because joint authority risk pools are ultimately member created and directed, they are not considered insurance in a conventional sense; they are an alternative to commercial insurance."])

Westchester acknowledges that, as a general principle, third party liability coverage issued by risk pools operating as a joint pool arrangement is "not insurance," agreeing with SELF and amici curiae.[14] Rather, Westchester contends that SELF acted outside the statutory exemption for insurance set forth in Government Code section 990.8[15] by affording coverage to SBT, not a

---

[14] Amici curiae are various entities that provide risk pool benefits to their members in a manner similar to SELF. They contend that if Westchester's arguments are adopted, the result would be higher costs to "public entities and their constituents and reverse long-standing legal precedents upon which those pools were organized and operate," necessitating high taxes or losses of other valuable public services. Another amicus curiae brief was filed by various joint powers authorities "formed to meet the self-insurance needs of California's community colleges and K-12 school districts." They explain their view of the public policy reasons for risk-sharing agreements and their position that SELF's member entities jointly agreed to allow individual member districts to add additional covered parties to the MOC for operations performed by or on behalf of the member district.

Because Westchester agrees that such joint pool arrangements in general do not constitute "insurance," SELF's reliance on this division's opinion in *Automotive Funding Group, Inc. v. Garamendi* (2003) 114 CalApp.4th 846 [7 Cal.Rptr.3d 912], in its letter brief to this court is not pertinent.

[15] Government Code section 990.8 provides:

"(a) Two or more local public entities, by a joint powers agreement made pursuant to Article 1 (commencing with Section 6500) of Chapter 5 of Division 7, may provide insurance authorized by this part or for any other purpose by any one or more of the methods specified in Section 990.4. Where two or more hospital districts have joined together to pool their self-insurance claims or losses, any nonprofit corporation created pursuant to subdivision (p) of Section 32121 of the Health and Safety Code, and affiliated with a hospital district which is a party to the pool may participate in the pool.

"(b) Two or more local public entities having the same governing board may be coinsured under a master policy and the total premium may be prorated among those entities.

"(c) The pooling of self-insured claims or losses among entities as authorized in subdivision (a) of Section 990.4 *shall not be considered insurance* nor be subject to regulation under the Insurance Code.

"(d) Any liability or loss under a joint powers agreement for the pooling of self-insured claims or losses authorized by this part and provided pursuant to this section may, notwithstanding Section 620 of the Insurance Code or any other provision of law, be reinsured to the same extent and the same manner as insurance provided by an insurer.

"(e) Where a joint powers agreement authorized by this part or authorized pursuant to Section 6516 provides for the pooling of self-insured claims or losses among entities, if any peril insured or covered under contract has existed, and the joint powers authority or other parties to the pool have been liable for any period, however short, the agreement may provide

member of the JPA and not a public entity, and that such coverage is "insurance" and thus subject to the "other insurance" clause of Westchester's policy, which controls who pays what. The argument is that SELF went beyond its authorized mandate to provide self-insurance for public entities and undertook the task of insuring nonmembers. Moreover, according to Westchester, strict construction does not allow for the extension of the immunity provided under Government Code section 990.8 merely because a contractor is acting on behalf of a member public entity, the position taken by amici. (See *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 673 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (conc. opn. of Mosk, J.) ["Under the California Constitution, therefore, the courts have no general authority by virtue of the judicial power to rewrite a statute, even to salvage its validity."]; accord, *Vershbow v. Reiner* (1991) 231 Cal.App.3d 879, 882 [282 Cal.Rptr. 684].)[16] Westchester's principal point is that section 990.8 does not include "contractors who are acting on behalf of" a public entity, but includes only member public entities.

█ We disagree. To the extent that the additional covered party, such as SBT, is performing operations by or on behalf of the member district we see no distinction in the pool's decision to consider that party's conduct as part of the shared risk. The risk of exposure is no different than if the District's own employees had done the driving, and in these times of grave fiscal problems for school districts there may be financial advantages for a district to use contract drivers such as SBT rather than its own drivers.[17] Westchester's counsel agreed with the trial court that SBT was "acting on behalf of the District and . . . for the purpose of the District's business." The pool covered the risk, and the Legislature deemed such joint pool arrangements not to be "insurance." Thus, Westchester's "other insurance" clause does not apply.

---

that the party insured or covered under contract is not entitled to the return of premiums, contributions, payments, or advances so far as that particular risk is concerned." (Italics added.)

[16] Westchester quotes the official comments of the Legislative Analyst as recited in *South El Monte, supra,* 38 Cal. App.4th 1629, 1634: " 'Senate Bill 2054 amends that portion of the Government Code which authorizes a local governmental agency *to insure itself* for the following risk:

'*Tort* or inverse condemnation liability;

'errors and omissions liability of employees; and

'insurance against the expense of defending a claim against the local public entity or employee. (Government Code § 990)' " (Italics added.)

[17] As amici curiae point out, if as it appears the MOC excludes coverage for any accident caused by the sole negligence of the additional covered party, the district's risk would be even less than if its own employees were driving.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. The parties are to bear their own costs on appeal.

Rubin, J., and Boland, J., concurred.