[No. B102978. Second Dist., Div. One. Oct. 31, 1997.]

MERCURY CASUALTY COMPANY, Plaintiff and Appellant, v. HERTZ CORPORATION, Defendant and Respondent.

COUNSEL

Silva, Clasen & Raffalow, Michael J. Convey and Randall Adams for Plaintiff and Appellant.

Alister McAlister, Spray, Gould & Bowers, Robert D. Brugge and Richard C. Turner as Amici Curiae on behalf of Plaintiff and Appellant.

Liebman & Reiner and Joseph R. Zamora for Defendant and Respondent.

Latham & Watkins, G. Andrew Lundberg, Lee D. Hwang, Hardin, Cook, Loper, Engel & Bergez, Chris P. Lavdiotis, Marshall A. Johnson, Garfield, Tepper, Epstein & Turner, David B. Epstein and Michael R. Weiss as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**MASTERSON, J.**—Mercury Casualty Company issued an automobile liability policy to Rita Gutierrez. The policy covered Gutierrez's use of rental cars. Gutierrez rented an automobile from The Hertz Corporation. Hertz was self-insured as the owner of the car. Gutierrez was involved in an accident with a third party, who filed suit against her and Hertz.

Gutierrez tendered the defense of the action to Mercury. Mercury, in turn, tendered the defense to Hertz. Hertz declined to provide a defense for Gutierrez but did retain counsel to represent itself in the third party action. Mercury provided Gutierrez with a defense and settled the action, paying a total of approximately $12,000.

Mercury brought this suit against Hertz to recover the costs of defense and indemnity, alleging that Hertz had provided primary coverage for the rental car as a self-insured owner. The trial court concluded that the Mercury policy was primary and granted summary judgment in favor of Hertz. We affirm.

### BACKGROUND

Mercury issued a personal automobile liability policy to Gutierrez as the named insured for the period August 19, 1993, through August 19, 1994. The policy obligated Mercury to "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." Mercury further agreed to provide a defense of any

claim or suit seeking such damages. The term "insured" included the named insured "for the ownership, maintenance or *use* of *any* auto . . . ." (Italics added.)

On June 8, 1994, Gutierrez rented an automobile from Hertz. The rental agreement described the vehicle as a 1994 Toyota Corolla, license plate No. 3CWZ994. On the first page of the rental agreement, under the heading "Customer Liability Protection Requirements," the following information appeared: "If you do not purchase the optional Liability Insurance Supplement (LIS) at the commencement of this rental, NO LIABILITY PROTECTION IS PROVIDED BY HERTZ. [¶] It is therefore your responsibility, and the responsibility of any authorized operator, to provide primary insurance protection for liability arising from the use or possession of the car." (Boldface and capitals in original.) Paragraph 10 of the rental agreement provided:

"LIABILITY PROTECTION

"(a) IF YOU DO NOT PURCHASE LIABILITY INSURANCE SUPPLEMENT (LIS) (a summary of LIS coverage is located on the back) AT THE COMMENCEMENT OF THE RENTAL, NO LIABILITY PROTECTION IS PROVIDED BY HERTZ WITH THIS AGREEMENT. IT IS, THEREFORE, YOUR RESPONSIBILITY AND THE RESPONSIBILITY OF ANY AUTHORIZED OPERATOR TO PROVIDE PRIMARY INSURANCE PROTECTION FOR LIABILITY ARISING FROM THE USE OR POSSESSION OF THE CAR AND YOU AND ANY AUTHORIZED DRIVER AFFIRMATIVELY AGREE TO PROVIDE SUCH PROTECTION. . . .

"(b) You and all Authorized Operators will indemnify and hold Hertz, its agents, and employees harmless from and against any loss, liability and expense beyond the scope of the protection provided for above, arising from the use or possession of the car by you or any operators with or without your or any authorized operator's permission." (Capitals in original.)

Gutierrez decided not to purchase liability insurance through Hertz, as indicated by her signature on a waiver of coverage form, which stated in part: "BY YOUR DECLINING THE OPTIONAL LIABILITY INSURANCE SUPPLEMENT (LIS), PARAGRAPH 10(B) OF THE RENTAL AGREEMENT TERMS AND CONDITIONS APPLIES TO THIS RENTAL. BY SIGNING BELOW, YOU ACCEPT THE TERMS OF THIS AGREEMENT AND YOU ACKNOWLEDGE THAT HERTZ PROVIDES NO LIABILITY PROTECTION TO YOU FOR THE RENTAL UNDER THIS AGREEMENT. YOUR OWN MOTOR VEHICLE INSURANCE (OR ANY AUTHORIZED OPERATOR'S) MAY OR MAY NOT PROVIDE SUCH LIABILITY PROTECTION." (Capitals in original.)

On June 11, 1994, while using the rental car, Gutierrez was involved in an accident with another vehicle. The other driver filed suit against Gutierrez and Hertz. Gutierrez tendered the defense of the action to Mercury. Mercury, in turn, tendered the defense of Gutierrez to Hertz, contending that Hertz had provided primary coverage to Gutierrez as the self-insured owner of the rental car. Hertz declined to provide a defense to Gutierrez, contending that Mercury had provided primary coverage to Gutierrez. Hertz retained counsel to represent only itself. Mercury provided a defense and indemnity to Gutierrez, expending approximately $4,000 on defense costs and $8,000 to settle the case. Hertz did not contribute toward Gutierrez's defense or the settlement.

In March 1995, Mercury filed this action against Hertz, seeking to recover the expenses incurred in defending and settling the third party action. Mercury alleged that, as the self-insured owner of the rental vehicle, Hertz had provided primary coverage for the accident. On cross-motions for summary judgment, the trial court ruled that the Mercury policy was primary. Accordingly, the trial court granted Hertz's motion, denied Mercury's motion, and entered judgment in favor of Hertz. Mercury filed a timely appeal.

### DISCUSSION

Summary judgment is appropriate if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

■ "A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. . . . In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. . . . In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed." (*Hanooka v. Pivko* (1994) 22 Cal.App.4th 1553, 1558 [28 Cal.Rptr.2d 70], citations omitted; see also Code Civ. Proc., § 437c, subd. (o)(2).) We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. (*Kelleher v. Empresa Hondurena de Vapores, S.A.* (1976) 57 Cal.App.3d 52, 56 [129 Cal.Rptr.

32].) In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true. (See *Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174, 1179, fn. 3 [214 Cal.Rptr. 746]; *Neinstein* v. *Los Angeles Dodgers, Inc.* (1986) 185 Cal.App.3d 176, 179 [229 Cal.Rptr. 612].)

In California, every driver and owner of a motor vehicle must satisfy the financial responsibility law by ensuring that they can pay statutory minimum amounts to third parties injured in an accident. (See Veh. Code, §§ 16020-16056.)[1] The driver or owner can establish the requisite financial responsibility through one of several means, e.g., purchasing a liability policy from an insurance company, depositing cash with the Department of Motor Vehicles (DMV), obtaining a bond from a surety company, or being certified by the DMV as a self-insurer. (*Id.*, §§ 16020-16021.) "Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the department [of motor vehicles] . . . ." (*Id.*, § 16052.)

In the present case, the driver of the vehicle (Gutierrez) had complied with the financial responsibility law by obtaining a liability policy from Mercury. The owner of the vehicle, Hertz, had complied with the law by qualifying as a self-insurer. (See Veh. Code, § 16053, subd. (a) [describing qualifications for self-insurer status].) Hertz's certificate of self-insurance stated: "This is to certify that The Hertz Corporation 660 Madison Avenue, New York, New York 10021 has been approved as a Self-Insurer under the Compulsory Financial Responsibility Law and assigned S.I. No. 73 by the Director of Motor Vehicles. This Certificate exempts you from the reporting provisions of the law as provided under Section 16002 of the California Vehicle Code.[2] However, if you or your employees receive a

---

[1]The minimum coverage limits are set forth in Vehicle Code section 16056, subdivision (a), which states: "No policy or bond shall be effective under Section 16054 unless issued by an insurance company or surety company authorized to do business in this state, except as provided in subdivision (b) of this section, nor unless the policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, to a limit of not less than thirty thousand dollars ($30,000) because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in injury to, or destruction of property, to a limit of not less than five thousand dollars ($5,000) because of injury to or destruction of property of others in any one accident."

[2]That statute provides: "If the driver at the time of the accident was driving a motor vehicle owned, operated, or leased by the employer of the driver and with the permission of the employer, then the driver shall within five days after the accident report the accident to his employer on a form approved by the employer. Within 10 days after receipt of the report the employer shall transmit a report on a form approved by the department to the office of the

request for a report from this office, return it and furnish the Self-Insurer number assigned."

Mercury's indemnity claim against Hertz rests on the theory that Hertz, as the self-insured owner of Gutierrez's rental vehicle, provided primary coverage for the accident while the Mercury policy provided excess coverage. That contention is based on Insurance Code section 11580.9, subdivision (d) (section 11580.9(d)), which states: ". . . where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."[3] In applying section 11580.9(d), Hertz's certificate of self-insurance is considered to be a policy of automobile liability insurance. (See former Ins. Code, § 11580.9, subd. (g), amended 1994, now § 11580.9, subd. (h).)[4] Thus, according to Mercury, Hertz provided primary coverage for the rental vehicle because its certificate of self-insurance, i.e., its automobile liability policy, described or rated the vehicle as an owned automobile. We disagree.

In *Interinsurance Exchange* v. *Spectrum Investment Corp.* (1989) 209 Cal.App.3d 1243 [258 Cal.Rptr. 43] (*Spectrum*), we addressed the question of whether a rental agency had provided primary coverage for one of its vehicles where it had made a cash deposit with the DMV to comply with the

department at Sacramento, except that an employer need not transmit such report when the vehicle involved in the accident is owned or operated as described in Section 16051 [concerning government-owned vehicles] or 16052 [concerning self-insured owners], or is owned or operated by any person or corporation who has filed with the department a certificate of an insurance carrier or surety company that there is in effect a policy or bond meeting the requirements of Section 16056 and when such policy or bond is in force with respect to the vehicle at the time of the accident." (Veh. Code, § 16002.)

[3]Insurance Code section 11580.9, subdivisions (a) through (c) describe three situations in which section 11580.9(d) does not apply. Subdivision (a) applies where one of the liability policies covers a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing motor vehicles. Subdivision (b) applies where one of the policies covers a named insured engaged in the business of renting or leasing motor vehicles *and* the vehicle either is a commercial vehicle or has been leased for a term of six months or longer. Subdivision (c) applies where a loss arises out of the loading or unloading of a motor vehicle. The parties agree that this case does not involve the situations governed by subdivisions (a) through (c).

[4]Insurance Code section 11580.9, subdivision (h), states: "For purposes of this article, a certificate of self-insurance issued pursuant to Section 16053 of the Vehicle Code or a deposit of cash made pursuant to Section 16054.2 of the Vehicle Code or a bond in effect pursuant to Section 16054 of the Vehicle Code or a report of governmental ownership or lease filed pursuant to Section 16051 of the Vehicle Code shall be considered a policy of automobile liability insurance. . . ."

financial responsibility law.[5] *Spectrum*, like this case, required that we determine whether the rental agency or the driver's personal automobile insurer had provided primary coverage. In resolving that question, we thoroughly examined the legislative history of section 11580.9 and concluded: "Clearly, the language of section 11580.9, subdivision (g) [now subdivision (h)], as well as the legislative history of that subdivision, establish the legislative intent that cash deposits . . . be considered as policies of automobile liability insurance within the meaning of subdivision (d) of that section, for the purpose of determining which policy of automobile liability insurance shall be primary and which shall be excess. It also appears one of the Legislature's purposes in enacting and amending subdivision (g) [now subdivision (h)] was to hold automobile rental agencies primarily liable when automobiles rented by them for a period of less than six months are involved in accidents when driven by renters whose own automobile liability insurance policies cover their losses when driving rented automobiles." (209 Cal.App.3d at pp. 1252-1253, quoted with approval in *Grand Rent A Car Corp.* v. *20th Century Ins. Co.* (1994) 25 Cal.App.4th 1242, 1251 [31 Cal.Rptr.2d 88].)

After reviewing the pertinent legislative history in *Spectrum*, we focused on the plain language of section 11580.9(d), which creates a conclusive presumption that a liability policy is primary if it "describe[s] or rate[s] [the vehicle] as an owned automobile." (§ 11580.9(d).) Because neither the rental agency's cash deposit nor the driver's personal automobile policy "described or rated" the vehicle as an owned automobile, we found that section 11580.9(d) did not apply. (209 Cal.App.3d at pp. 1247, 1253-1255.) As we explained, section 11580.9(d) "can be applied only where a cash deposit or other form of financial responsibility specified in subdivision (g) [now subdivision (h)] describes or rates the vehicle involved in the accident as an owned automobile. There are a number of different forms of financial responsibility available, each with its own specific requirements. . . . If the Legislature wants to hold automobile rental companies primarily liable for accidents involving their rental vehicles, it must adopt a consistent statutory framework for doing so, no matter what form of 'insurance' the company chooses. Only then can the underlying purpose of section 11580.9 be fulfilled, to avoid congesting the courts with litigation among insureds, insurers and others concerning which policy should be primary . . . ." (209 Cal.App.3d at p. 1255, citation omitted; see also *Ohio Cas. Ins. Co.* v. *Aetna Ins. Co.* (1978) 85 Cal.App.3d 521, 523-524 [149 Cal.Rptr. 562] [section 11580.9(d) did not render "audit" or "fleet" policy primary since policy did

---

[5]Like a certificate of self-insurance, a cash deposit constitutes an automobile liability policy for purposes of division 2, part 3, chapter 1, article 2 of the Insurance Code, which includes section 11580.9(d). (See fn. 4, *ante.*)

not describe or rate owned automobiles but simply insured them automatically upon transfer of ownership to the insured].)

For similar reasons, section 11580.9(d) does not determine which liability policy was primary in this case. To "describe or rate" a vehicle "means a particularization of the vehicle." (*Ohio Cas. Ins. Co.* v. *Aetna Ins Co., supra,* 85 Cal.App.3d at p. 524; accord, *Grand Rent A Car Corp.* v. *20th Century Ins. Co., supra,* 25 Cal.App.4th at p. 1253; *Spectrum, supra,* 209 Cal.App.3d at p. 1253.) Gutierrez's rental car, the 1994 Toyota Corolla, is not described or rated in either the Mercury policy or Hertz's certificate of self-insurance. As Division Five of this court has recognized: "There is no dispute that . . . rented cars are not described or rated as owned automobiles in [personal automobile] insurers' policies. It is also apparent that there is nothing in [a] certificate of self-insurance which describes or rates the vehicles owned by [a car rental agency]." (*Grand Rent A Car Corp.* v. *20th Century Ins. Co., supra,* 25 Cal.App.4th at p. 1253.)

Of course, the rental agreement between Hertz and Gutierrez did "describe" the rental vehicle. Accordingly, Mercury argues that the rental agreement, together with Hertz's certificate of self-insurance, constitutes a liability insurance policy. Were that the case, Hertz would be the primary insurer under section 11580.9(d), or so the argument goes. We reject Mercury's contention.

Nothing in the rental agreement even remotely suggests that it should be treated as a policy of insurance. Indeed, the agreement repeatedly stated that Hertz was *not* providing Gutierrez with any liability protection (since she declined to purchase the liability insurance supplement) and that it was her responsibility to obtain such protection. The agreement further provided that Gutierrez would indemnify Hertz in the event of an accident. Finally, the agreement informed Gutierrez that her personal automobile insurance "may or may not provide such liability protection." In these circumstances, the rental agreement did not constitute an insurance policy.

Our conclusion on this point is consistent with *Grand Rent A Car Corp.* v. *20th Century Ins. Co., supra,* 25 Cal.App.4th 1242 (*Grand*). There, the rental agreement expressly stated that the rental agency (Grand Rent A Car Corporation) was providing liability protection to the driver.[6] As the Court of Appeal correctly noted, "A car rental agreement which contains a provision

---

[6]The agreement stated in pertinent part: " '*Liability Insurance.* Anyone driving the car as permitted by this Agreement will be protected against liability for causing bodily injury or death to others or damaging the property of someone other than the driver and/or the renter up to the limits stated in box 21 on the other side of this Agreement, but in no event less than the

indemnifying the renter from liability to third persons, up to a specified limit, resulting from an accident which occurs while the rented vehicle is in use constitutes insurance. [Citations.]" (25 Cal.App.4th at p. 1251.) In finding that the rental agency, which was self-insured, had provided primary coverage, the Court of Appeal explained:

"The car rental agreement in this case provides that Grand will indemnify the renter for liability to third persons arising out of operation of the rented vehicle. The provision is contained in a paragraph entitled 'Liability Insurance.' Moreover, the paragraph expressly provides that the liability 'coverage' will be provided to the renter in accordance with the terms and conditions of 'a standard automobile liability insurance policy.' The paragraph further provides that Grand may provide liability coverage under a certificate of self-insurance or an insurance policy. All of the elements of an insurance contract are contained in the car rental agreement. In addition, it is apparent from the language of the provision that Grand understood the agreement served as insurance. The indemnification provisions are expressly referred to as liability insurance. . . . We conclude the car rental agreement is a contract of insurance.

". . . [T]he car rental agreement specifically provides that the automobile liability insurance may be provided by Grand in the form of a certificate of self-insurance. Grand has elected to provide the insurance coverage by means of such a certificate. Pursuant to Insurance Code section 11580.9, subdivision (g) [now subdivision (h)], a certificate of self-insurance is a policy of automobile liability insurance. Accordingly, we conclude the car rental agreement, which is a contract of insurance, and the certificate of self-insurance, which is the means of effectuating the contract of insurance, operate together to constitute a policy of automobile liability insurance within the meaning of Insurance Code section 11580.9, subdivision (d)." (25 Cal.App.4th at p. 1252.)

Unlike the rental agency in *Grand*, Hertz did not provide liability protection for the driver. Gutierrez's rental agreement made clear that she was solely responsible for obtaining her own liability protection. Consequently, the agreement did not constitute a contract of insurance, and it cannot be read in conjunction with Hertz's certificate of self-insurance for purposes of section 11580.9(d).

---

(minimum) financial responsibility limits required by applicable law. Such coverage will be provided by [Grand] according to the terms and subject to all of the conditions of a standard automobile liability policy, including all requirements as to notice and cooperation on [renter's] part, which are hereby made a part of this Agreement. [Grand] can provide coverage under a certificate of self-insurance or an insurance policy, or both as [Grand chooses]. In any case, a copy of the policy and/or Certificate, will be available for [renter's] inspection at [Grand's] main office.' " (25 Cal.App.4th at p. 1246.)

Like the cash deposit in *Spectrum, supra,* 209 Cal.App.3d 1243, Hertz's certificate of self-insurance did not describe or rate the rented vehicle. Thus, section 11580.9(d) does not resolve the question of which party provided primary coverage. This leads us to the same result we reached in *Spectrum:* "Section 11580.9's failure to cover the instant case means it must be governed by some other law, notwithstanding the Legislature's intent that section 11580.9 express the total public policy regarding the order in which liability insurance policies covering certain losses will be applied. It must therefore be ascertained what law does apply in determining whose liability is primary. [¶] Defendant [rental agency] turns to the Vehicle Code for resolution of this question. Vehicle Code section 17150 provides the owner of a motor vehicle is liable for death or injury caused by the negligent or wrongful act or omission of a permissive driver under a theory of imputed negligence. . . . However, the owner's liability is limited by Vehicle Code section 17151, while the driver's liability is unlimited. . . . Under Vehicle Code section 17153 the owner is subrogated to the rights of the injured party and may recover from the driver the amount of any judgment recovered against it by the injured party. Thus, the liability of the permissive driver is primary and that of the owner is secondary, as between the two. . . . Under the Vehicle Code, the driver—and thus plaintiff, as her insurance company —would be primarily liable. [¶] . . . [¶] We hold [that] section 11580.9 does not apply to the instant situation to determine whose liability is primary; under the Vehicle Code the driver's—and thus [her personal automobile insurer's]—liability is primary. Therefore, the trial court's judgment to that effect was correct." (209 Cal.App.3d at pp. 1255-1256, citations omitted.)[7]

In closing, we note that certain amici curiae argue that, because Hertz's certificate of self-insurance is an automobile liability policy under Insurance Code section 11580.9, subdivision (h), Hertz must comply with the purported requirement of Insurance Code section 11580.1, subdivision (b)(4),

---

[7]If there was ever any doubt as to the soundness of our decision in *Spectrum,* it was laid to rest in 1994 when the Legislature amended Insurance Code section 11580.9 without making any changes that would alter the analysis or holding of that decision. (See Stats. 1994, ch. 1252, § 1 [adding new subdivision (g) concerning allocation of defense costs among multiple insurers and renumbering former subdivision (g) as subdivision (h)].) Indeed, the author of the 1994 amendment explained in a letter to the Secretary of the Senate that "no provision of the bill is intended to affect the holding in the case of Interinsurance Exchange v. Spectrum Investment Corp., 209 Cal.App.3d 1243 [258 Cal.Rptr. 43]." (Sen. J. (1993-1994 Reg. Sess.) p. 6840.) By motion, the Senate voted to print the letter in its journal, thereby making it part of the legislative record. (*Ibid.*) Thus, the Legislature has acquiesced in, as well as specifically endorsed, *Spectrum*'s interpretation and application of section 11580.9. (See *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734-735 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]; see also *Miranda* v. *National Emergency Services, Inc.* (1995) 35 Cal.App.4th 894, 903, fn. 8 [41 Cal.Rptr.2d 593]; *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1157, fn. 6 [278 Cal.Rptr. 614, 805 P.2d 873].)

that such policies provide equal coverage for the permissive users of a covered vehicle. Of course, we rejected a similar argument in *Spectrum*. (See 209 Cal.App.3d at pp. 1256-1258 [car rental agency that complied with financial responsibility law by making cash deposit with DMV not obligated to extend liability coverage to permissive users]; see also fn. 7, *ante*.) In any event, this argument was not raised below. Nor is it advanced on appeal by Mercury—the party for whose benefit amici curiae made the argument. Indeed, in its reply brief, Mercury refers to the argument as "moot."[8] "As a general rule, issues not raised by the appealing parties may not be considered if raised for the first time by amici curiae. [Citations.]" (*Spectrum, supra*, 209 Cal.App.3d at pp. 1258-1259.) We think this rule is particularly appropriate where the party who stands to benefit from the argument has expressly disavowed any interest in it. Accordingly, we decline to consider the issue.

## DISPOSITION

The judgment is affirmed.

Vogel (Miriam A.), Acting P. J., and Dunn, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied January 28, 1998.

---

[8]The reply brief states: ". . . Mercury does not argue that Hertz' self-insurance must afford coverage to Ms. Gutierrez as a permissive user pursuant to Insurance Code Section 11580.1(b)(4). The question whether the self-insurance covers the driver as a permissive user is simply moot in this context because it is the coverage of the vehicle which controls the outcome." (Underscoring in original.)

*Judge of the Municipal Court for the Long Beach Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.